## CHARLES FREDERICK TEPPER

### v.

### THE SUPREME COUNCIL OF THE ROYAL ARCANUM, ANNA WORTH et al.

59  321
r61  638
─────
59  321
65  180

[Submitted December 4th, 1899. Decided December 21st, 1899. Filed March 24th, 1900.]

1. While a beneficial association organized under an act authorizing it to pay benefits to certain relatives of deceased members may contract the classes of persons authorized to receive benefits within narrower limits than those prescribed by the statute, it cannot extend them.

2. Beneficiaries named in a benefit certificate of a beneficial association have no vested right in the fund until after the decease of the member, since the latter has the right to change the beneficiaries at any time before his death.

3. Act of Massachusetts, May 9th, 1877, as amended by act of 1882, authorizes the organization of beneficial associations for the purpose of assisting the "widows, orphans and other dependents or other *relatives* of deceased members, or any person dependent on deceased members."—*Held*, that stepchildren

Tepper v. Supreme Council of the Royal Arcanum.

of a member of an association organized under such acts were not included within any of the classes of persons authorized to take under such statute, and hence were not entitled to recover under a certificate designating them as beneficiaries    The case of *Bennett* v. *Van Riper*, *2 Dick. Ch. Rep. 563*, distinguished on the ground that the word "*relatives*" had, at the time of the legislation in question, been confined by judicial construction in Massachusetts to its strict meaning.

4. Where stepchildren, named as beneficiaries in a benefit certificate, who could not take because they were not within the persons designated by the statute under which the association was organized, paid assessments on such certificate, in order to keep it alive, they are entitled to an equitable lien on the fund derived therefrom for the repayment of such assessments.

Heard upon pleadings and proofs in open court, and the written arguments of counsel.

The suit is in the nature of an interpleader.    The holder of the fund in dispute is the defendant the Supreme Council of the Royal Arcanum ; the contestants are the complainant, Charles F. Tepper, on the one side, and his five half-brothers and sisters, Anna Worth (formally Plondrick), Antoni Sieburg, Wilhelmina · Ranges, August Zuber and Wilhelm Zuber, on the other side.

The nature of the contest will be best understood by a statement of the facts.

In 1864 Mrs. Zuber was the widow, with five children, of one Joseph Zuber, and in that year married William Tepper, and bore him the complainant, Charles Frederick Tepper.    The children of the former marriage (the oldest of whom was born in 1853, and the youngest in 1860) lived with Mr. and Mrs. Tepper, and formed a part of their family, going to school until they were fourteen years old or thereabouts, and after that working out and assisting to support the family ; but previous to the year 1885 all had been married and had left their parents' home.

In the year 1885 William Tepper made an application in writing to the Royal Arcanum, Hoboken Council No. 99, for a full-rate memership in that council, which application was in these words :

Tepper v. Supreme Council of the Royal Arcanum.

"APPLICATION FOR MEMBERSHIP IN THE ROYAL ARCANUM.

"TOWN OF UNION, April 28th, 1885.

" *To the officers and members of Hoboken Council No. 99, Royal Arcanum, located at Odd Fellows Hall Hoboken, N. J. :*

" Having become acquainted with the objects of your Order, I hereby make application for full rate membership in your Council, and do declare, upon my honor as a man, that the statements by me subscribed herein are each and every one of them true, to the best of my knowledge and belief. I am not now a member of this Order; I have not, within six months, been rejected; am not now under suspension, and have never been expelled from any Council of this Order; and am a believer in a Supreme Being.

"I reside at No. 79 Gardner street, town of Union, State of New Jersey. I was born on the 11th day of February, 1835, and am between 50 and 51 years of age. My occupation is that of agent. Place of business, No. 79 Gardner street.

"I direct that, in case of my decease, all benefit to which I may be entitled from the Royal Arcanum, be paid to Anna Plondrick, Antonette Sieburg, Wilhelmiene Ranges, August Zuber, Wilhelm Zuber, Friedrich Tepper, related to me as my children, subject to such future disposal of the benefit, among my dependents, as I may hereafter direct, in compliance with the laws of the Order. I am temperate in my habits, and have no injury or disease which will tend to shorten my life, am now in good health and am able to gain a livelihood. I do hereby consent and agree that any untrue or fraudulent statement made above, or to the medical examiner, or any concealment of facts by me in this application, or my suspension or expulsion from, or voluntarily severing my connection with the Order, shall forfeit the rights of myself and my family, or dependents, to all benefits and privileges therein."

The persons therein named as his children were the five children of his wife by her former marriage and the complainant.

Pursuant to that application a benefit certificate was issued to him dated at Boston, Massachusetts, the 8th of July, 1885, as follows:

" No. 63761.　　　　　　　　$3,000.

" Royal Arcanum Benefit Certificate.

" This certificate is issued to William Tepper, a member of Hoboken Council No. 99, Royal Arcanum, located at Hoboken, N. J., upon evidence received from said Council that he is a contributor to the Widows' and Orphans' Benefit Fund of this Order; and upon condition that the statements made by him in his application for membership in said Council, and the statements certified by him to the Medical Examiner, both of which are filed in the Supreme Secretary's office, be made a part of this contract, and upon condition

Tepper v. Supreme Council of the Royal Arcanum.

that the said member complies, in the future, with the laws, rules and regulations now governing the said Council and fund, or that may hereafter be enacted by the Supreme Council to govern said Council and fund. These conditions being complied with, the Supreme Council of the Royal Arcanum hereby promises and binds itself to pay out of its Widows' and Orphans' Benefit Fund to Anna Plondrick, Antonette Sieburg, Wilhelmiene Ranges, August Zuber, Wilhelm Zuber and Friedrich Tepper (children), a sum not exceeding three thousand dollars, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate; provided that said member is in good standing in this order at the time of his death, and provided also that this certificate shall not have been surrendered by said member, and another certificate issued at his request, in accordance with the laws of this order.

"In witness whereof," &c.

Mrs. Tepper pre-deceased her husband, and he died in 1898. At the time of his death the certificate was in the possession of the husband of one of the stepdaughters, but was produced at the hearing.

The Royal Arcanum was organized in Massachusetts on the 5th of November, 1877, under the provisions of an act of the legislature of that state, dated the 9th of May, 1877, which provides that such organizations

"may, for the purpose of assisting the *widows, orphans or other dependents of deceased members*, provide in their by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, then to be forthwith paid to the person or persons entitled thereto, and such fund so held shall not be liable to attachment by trustee or other process; and associations may be formed under said act for the purpose of rendering assistance to the persons and in the manner above specified."

The second section of the act provides that the general laws relating to life insurance companies shall not apply.

By a supplement passed in 1882 it is provided that

"A corporation organized for any purpose mentioned in section two may, for the purpose of assisting the widows, orphans *or other relatives* of deceased members, or any person dependent upon deceased members, provide in its by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto," &c.

The Royal Arcanum was organized in November, 1877, shortly after the passage of the act first above cited, and the certificate of organization given by the secretary of the commonwealth, recited one of its objects to be:

"Assisting the *widows and orphans of deceased members*, establishing a fund for the relief of sick and distressed members, and one for a widows' and orphans' benefit fund."

There was no distinct proof given as to the precise language used in the first constitution and by-laws of the association, but in 1884, two years after the act of 1882, it adopted an amended constitution and by-laws.

The constitution then adopted declares that one of its objects is

"*To establish a widows' and orphans' benefit fund*, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding three thousand dollars shall be paid to *to his family or those dependent on him, as he may direct.*"

And the third by-law provides as follows:

"Sec 2. (1) Each applicant shall enter upon his application the name or names and *relationship or dependence of the members of his family or those dependent upon him, to whom he desires his benefit paid*, and the same shall be entered in the benefit certificate according to said direction.

"(2) No benefit shall be made payable to any person or persons permanently residing outside the limits of the United States or Dominion of Canada.

"(3) When no relation by marriage or consanguinity is shown, in the direction for payment of a benefit, proof of dependency must be furnished satisfactory to the Supreme Secretary, before the benefit certificate is issued.

"Sec. 3. (1) A member may, at any time, when in good standing, surrender his benefit certificate and a new certificate shall thereafter be issued, payable to such beneficiary or beneficiaries as such member may direct, in accordance with the laws of the order, upon the payment of a fee of fifty cents."

In 1891 the constitution and by-laws were again amended, stating the object of the widows' and orphans' fund, as follows:
Constitution, article V.:

" To establish a Widows' and Orphans' Benefit Fund, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding three thousand dollars

shall be paid to the *wife, children, relatives of, or persons dependent upon* such member, *as limited and described in the laws of said order relating to benefit certificates, as he may direct in accordance with said laws.*"

And in the general by-laws adopted at that time, chapter second, as follows :

" Sec. 323. Each applicant shall enter upon his application the name or names, residence and relationship or dependence of the person or persons of the classes in the next section embraced, to whom he desires his benefit paid, and the same shall be entered in the Benefit Certificate according to said direction.

" Sec. 324. A benefit may be made payable to any one or more persons of any of the following classes only :

*Class First.*

" Grade 1st.   Member's wife.
  "      2d.    Member's children, and children of deceased children.
  "      3d.    Member's grandchildren.
  "      4th.   Member's parents.
  "      5th.   Member's brothers and sisters of the whole blood.
  "      6th.   Member's brothers and sisters of the half blood.
  "      7th.   Member's grandparents.
  "      8th.   Member's nieces and nephews.
  "      9th.   Member's cousins in the first degree.
  "     10th.   Member's aunts.
  "     11th.   Member's uncles.
  "     12th.   Member's next of kin who would be distributees of the personal estate of such member upon his death intestate.

" In either of which cases no proof of dependency of the beneficiary shall be required.

" *Class Second.*

" To an affianced wife, or to any person who is dependent upon the member for maintenance (food, clothing, lodging or education) ; in either of which cases written evidence of the affianced relation or dependency, within the requirements of the laws of the order, must be furnished to the satisfaction of the Supreme Secretary before the benefit certificate can be issued.

" Sec. 330. If at the time of a death of a member, who has designated as beneficiary a person of Class Second, the dependency required by the laws of the order, *shall have ceased, or shall be found not to have existed, or if any designation shall fail for illegality, or otherwise,* then the benefit shall be payable to the person or persons mentioned in Class First, Sec. No. 324, if living, in the shares and order of precedence by grades as therein enumerated, the persons

Tepper *v.* Supreme Council of the Royal Arcanum.

living of each precedent grade taking, in equal shares per capita, to the exclusion of all persons living of subsequently enumerated grades; except that in the distribution among persons of grade second the children of deceased children shall take by representation the share the parent would have received if living. If no one of said Class First shall be living at the death of the member, the benefit shall revert to the Widows' and Orphans' Benefit Fund."

By the constitution and by-laws adopted to take effect August 1st, 1897, it was provided as follows:

"5th. To establish a Widows' and Orphans' Benefit Fund, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding three thousand dollars shall be paid to the wife, children, relatives of, or persons dependent upon such member, as limited and described in the laws of said order relating to benefit certificates, as he may direct in accordance with said laws."

And in the by-laws:

"Sec. 323. Each applicant shall enter upon his application the name or names, residence and relationship or dependence of the person or persons of the classes in the next section embraced, to whom he desires his benefit paid, and the same shall be entered in the benefit certificate according to said direction.

"Sec. 324. A benefit may be made payable to any one or more persons of any of the following classes only:

*" Class First.*

"Grade 1st. Member's wife.
"      2d.  Member's children, and children of deceased children.
"      3d.  Member's grandchildren.
"      4th. Member's parents.
"      5th. Member's brothers and sisters of the whole blood.
"      6th. Member's brothers and sisters of the half blood.
"      7th. Member's grandparents.
"      8th. Member's nieces and nephews.
"      9th. Member's cousins in the first degree.
"     10th. Member's aunts.
"     11th. Member's uncles.
"     12th. Member's next of kin who would be distributees of the personal estate of such member upon his death intestate.

"In either of which cases no proof of dependency of the beneficiary designated shall be required.

Tepper *v.* Supreme Council of the Royal Arcanum.

"*Class Second.*

" To an affianced wife, or to any person who is dependent upon the member for maintenance (food, clothing, lodging or education); in either of which cases written evidence of the affianced relation or dependency, within the requirements of the laws of the order, must be furnished to the satisfaction of the Supreme Secretary before the benefit certificate can be issued.

" Sec. 329. No benefit shall be payable to a person or persons of Class Second, mentioned in Sec. No. 324, unless the dependency therein required to be shown exists at the time of the member's death; in which case proof of such dependency at the member's death shall be furnished in writing to the satisfaction of the Supreme Regent, whose decision thereon shall be final and conclusive upon all parties in interest before payment of the benefit shall be made.

" Sec. 330. If, at the time of the death of a member, who has designated as beneficiary a person of Class Second, the dependency required by the laws of the order shall have ceased, or shall be found not to have existed, or if the designated beneficiary is his wife, and they shall be divorced upon the application of either party, or if any designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in Class First, Sec. No. 324, if living, in the shares and order of precedence by grades as·therein enumerated, the persons living of each precedent grade taking, in equal shares per capita, to the exclusion of all persons living of subsequently enumerated grades; except that in the distribution among persons of grade 2d the children of deceased children shall take by representation the share the parent would have received if living. If no one of said Class First shall be living at the death of the member the benefit shall revert to the Widows' and Orphans' Benefit Fund."

The proofs show that in the latter years of his life Mr. William Tepper was unable to keep up the monthly dues on his certificate of membership, and some of his stepchildren assisted him in so doing, and that the certificate was handed to the husband of one of the stepdaughters, upon an understanding which indicated that it was a pledge for the moneys advanced, or at least as security that it would not be surrendered and the names of the beneficiaries changed.

*Mr. J. Emil Walschied,* for the complainant.

*Mr. Rudolph F. Rabe,* for the stepchildren.

*Mr. W. Holt Apgar,* for the Royal Arcanum.

PITNEY, V. C.

Counsel for complainant advances three propositions:

*First.* That the use of the word "children" in describing stepchildren in the application for membership was, if not a fraud, at least such a misdescription as prevents the insertion by the Royal Arcanum of their names in the certificate of membership from having the effect of an acceptance and approval of them by the society as proper beneficiaries.

*Second.* That under the Massachusetts statute of 1877, under which the Royal Arcanum was organized, as amended in 1882, and under the constitution and by-laws made by the society in pursuance thereof, as they stood in 1885, it was not competent for the member to designate his stepchildren as beneficiaries to take the fund in question at his death, for the reason that they were not within the scope of the language used in the original act—" widows, orphans, or other dependents of deceased members "—nor within the enlarged language used in the amendment of 1882, namely, " widows, orphans, or *other relatives* of deceased members, or any person dependent upon deceased members;" nor within the scope of the language of the certificate of incorporation issued by the executive authority to the Royal Arcanum (which is in the nature of a charter), where the objects are recited to be, " assisting the widows and orphans of deceased members;" nor within the words found in the constitution of the order, which provides for raising a sum not exceeding $3,000 to be paid to the "family of a deceased member, or those dependent on him, as he may direct;" nor within the language of the by-laws, which describe the persons who may be named as beneficiaries.

*Third.* He contends that if it be possible to include stepchildren within the field defined by the statute, constitution and by-laws as they stood in 1885, yet the application for, and the certificate of, membership, by the terms of each, provide for a change in " the laws, rules and regulations governing the council of the Royal Arcanum and fund," and that such change was made in the constitution and by-laws of 1891, which clearly exclude stepchildren.

Counsel for the stepchildren, in answer to the first two positions, contends that stepchildren are "children," and, hence, orphans, within as well the language of the statute and the language of the executive certificate, as also within the language of the constitution of the society, which speaks of "Widows' and Orphans' Benefit Fund, and the accumulation of money to be paid to the member's family or those dependent on him as he may direct."

Their counsel relies mainly upon the act of 1882, which enlarges the scope of the original act, and provides that a corporation like the Royal Arcanum may provide in its by-laws for the payment to each member of a fixed sum for the purpose of "assisting the widows, orphans or *other relatives* of deceased members, or any person dependent upon deceased members." The enlargement of the power being found in the words "*or other relatives*," and he contends that the words "other relatives" include relatives by affinity, as well as those by consanguinity, and that stepchildren are such children by affinity.

It is perfectly well settled that it is not within the power of an association organized under this act to pay any benefits to any person designated who does not come within the field of the limits set by the Massachusetts act. A benefit society may, indeed, contract its field within narrower limits than those laid down by the statute, but it cannot exceed them. *American Legion of Honor* v. *Perry, 140 Mass. 580,* where a benefit society organized under the act in question was under consideration; *Golden Star Fraternity* v. *Martin, 30 Vr. 207; American Legion of Honor* v. *Smith, 18 Stew. Eq. 466; Britton* v. *Royal Arcanum, 1 Dick. Ch. Rep. 102; S. C. affirmed on appeal, 2 Dick. Ch. Rep. 325.*

It is further well settled that the beneficiaries named by the member of the order have no vested right in the fund until after the decease of the member, for the latter has the right to change the beneficiaries at any time before his death. *Golden Star Fraternity* v. *Martin, 30 Vr. 207* (at *p. 215*); *Masonic Mutual Benefit Association* v. *Tolles, 70 Conn. 539 (Supreme*

*Court, Connecticut*); *Legion of Honor* v. *Adams, 68 N. H. 236* (*New Hampshire*).

It is further well settled that in ascertaining the true construction of the by-laws, which fix the limits of the field from which the beneficiaries may be chosen, the statute authorizing the organization, the certificate of organization and the constitution and by-laws are to be construed with reference to each other. Chief-Justice Magie, in *30 Vr. 214*, says: "The contract between the association and its beneficiary members is to be discovered in such a case from the beneficiary certificate to be issued to the member, read with the rules and by-laws of the association and the statute from which it obtained its corporate powers. The contract, when discovered, is to be construed and given force and effect as other contracts upon a similar subject." And Mr. Bacon, in his treatise, after an examination of numerous authorities, states his conclusion thus:

"The conclusion, from an examination of all the cases, is that the contract is found in the certificate, if one is issued, but is to be construed and governed by the charter and by-laws of the society and the statutes of the state of the domicile of the corporation." *Bac. Ben. Soc. ? 161.*

But for the act of 1882, I think that the first two questions raised would be scarcely debatable. I think that stepchildren do not come at all within the scope of the designation in the act of 1877, or in the constitution and by-laws of the association. In designating the relationship between the beneficiaries and the deceased member they are spoken of as "widows, orphans or other dependents of deceased members." By "orphans" is there meant the children, in the proper sense of the word, of the deceased member. The primary sense of "children" is offspring, and that is the sense in which it is ordinarily used when a question of relationship is involved. It is, indeed, often applied by an elderly person as a word of endearment or affection to one younger, where no relationship whatever exists, but it cannot be properly held, when found in a statute or contract, to include stepchildren. Nor were either of the stepchildren in this case dependents upon the member at the time this con-

tract was made.  They had all left their home with the mother
and stepfather, and were rather, as the evidence tends to show,
contributors to the support of the member than dependent upon
him for support.

The by-laws in force in 1885, the date of this contract, do not
·in terms go beyond the three classes mentioned in the statute—
widows, orphan children, and persons dependent upon the mem-
ber.   The third by-law provides that the applicant shall enter
upon his application " the name or names and relationship or
dependence of the members of his family,· or those dependent
upon him," to whom he desires the benefit paid.  Now, the
word " relationship " there evidently refers to the connection be-
tween him and the member or members of his family upon whom
the benefit is to be conferred.

The language used in the third subdivision of this by-law is
relied upon to show a wider scope.   But I think it is insufficient
for that purpose.  It says:  " When no relationship by marriage
or consanguinity is shown in the direction for the payment of a
benefit, proof of dependency must be furnished."  Now, the
" relationship by marriage " there referred to was manifestly in-
tended to refer to the wife, who, ·if she survived the member,
would become a widow; and by " consanguinity " is evidently
intended blood relationship.  That subdivision simply means
that in the absence of the naming of a wife or children as bene-
ficiaries, the proof of dependency must be furnished.

But it is important to ascertain the force of the words ·" other
relatives " found in the act of 1882.  To this end it is proper to
inquire what force has been given to that language found in
other statutes of Massachusetts by the courts of that state, and
in that examination we find two remarkable cases.   The first is
*Esty* v. *Clark, 101 Mass. 36 (1869)*.  There the testator had
married a widow with one child, a son.  By his will he gave
all his property to his wife.  She died in the same accident with
the testator, but before he did, and her son by her former hus-
band claimed one-half of the property which she would have
taken under her husband's will, under a clause of the statute of
Massachusetts which provided that

"when a devise of real or personal estate is made to a child or other *relation* of the testator, and the devisee dies before the testator, leaving issue who survive the testator, such issue shall take the estate so devised, in the same manner as the devisee would have done if he had survived the testator;"

and it was held that the stepson of the testator could not take any share of testator's estate which would have gone to his mother if she had survived his father, because his mother *was not a relation* of the testator in the sense in which that word was used in the statute.

The next case is *Kimball* v. *Story, 108 Mass. 382 (1871).* There a woman had married a widower with one son named William B. J. Johnson, and then survived her husband, receiving a large amount of property from him. By her will she devised all the rest and residue of her estate "to my son, William B. J. Johnson, his heirs, executors, administrators and assigns." William B. J. Johnson died after the making of the will, but before the testatrix, leaving one son, William Johnson; and the question was between William Johnson, as representative under the statute cited in the preceding case, and the next of kin of the testatrix; and it was held by Mr. Justice Gray, after a full examination of the authorities, that the legacy lapsed by the death of the stepson in her lifetime, using this language, after stating the general rule that at the common law all legacies to persons who die before the testator or testatrix lapse: "The only exception, created by statute, to the general rule, is where a devise or bequest is made 'to a child or other relation of the testator,' and includes only relations by blood, and not connection by marriage, even a husband or wife," citing *Esty* v. *Clark* and other cases. "The necessary conclusion is that the legatee being only a stepson of the testatrix, the legacy lapsed by his death." And farther on: "The fact that the testatrix called the legatee her son and had long lived with him as such, and that a considerable part of the property bequeathed to him had come to her from his father, cannot affect her absolute power to dispose of her property, or the rules of law by which her testamentary dispositions are to be governed."

This construction having been given to the words "relative" and "relation" by the supreme court of Massachusetts a few years previous to the passage of the amendment of 1882, the presumption is that the word "relatives" was there used in its strict sense as relatives by consanguinity, and not by affinity; and, as we have seen, there is nothing in the constitution and by-laws, adopted in 1884, that indicates that the counsel who assisted the Royal Arcanum in preparing the amended constitution and by-laws of 1884 put any wider or different construction upon the language in question.

Defendants' counsel relies, in this part of the case, upon the decision of our court of errors and appeals, in *Bennett* v. *Van Riper*, *2 Dick. Ch. Rep. 563*. There the words "related to" were construed by that court to include relatives by affinity, but they were found, not as here, in a statute, but in the constitution and by-laws of an association organized under an act of the legislature of the State of Indiana, and the court was not considering the construction of a statute of that state. It does not appear that the statute of Indiana contained any limitation of the field from which the benefit association might permit its members to choose, and the attention of the court was confined entirely to the contract between the parties contained in the relief fund by-laws of the association; while here we have to construe the force of a word used in the statute of a state, which, by its highest authority, has given to that word, when used in a statute, a particular and restricted meaning.

And then I think that the careful enumeration of the classes from which beneficiaries might be designated, found in the by-laws of 1891, has some significance. It is quite clear that those cannot be construed as including stepchildren, and no motive has or can be suggested for the council of the Royal Arcanum, desiring at that time to narrow the field and exclude any class of persons which their former by-laws had included.

The conclusion is that the contract between William Tepper and the Royal Arcanum cannot be construed as authorizing him to designate his stepchildren as beneficiaries under his certificate of membership; that the certificate of membership in which

their names were inserted as beneficiaries was so issued upon the representation that they were the member's offspring, and that stepchildren were not included in the class of persons among which, according to the constitution and by-laws of the association beneficiaries could be chosen and received.

This result renders it unnecessary to consider the third proposition of the complainant, namely, that granting the stepchildren were properly and lawfully accepted by the Royal Arcanum and named as beneficiaries in the certificate of membership, yet the council had the right by subsequent amendment of their constitution and by-laws to exclude them, and that they did so by the by-laws of 1891.

The proofs tended to show that some small sums of money were advanced by one or more of the stepchildren toward paying the annual dues of Mr. Tepper in the last years of his life. I am of the opinion that the parties advancing these sums have a lien in equity upon the fund for the repayment of the amount so advanced.

The costs will be disposed of precisely as if the Royal Arcanum had filed an interpleader bill. It is entitled to its costs out of the fund, with a counsel fee to its counsel, and the amount so deducted from the fund will be added to the complainant's costs, and recovered against the other defendants, the stepchildren, and be set off against such sum as shall be ascertained to be due to them, or either of them, for moneys advanced to pay the annual dues. I think the complainant is entitled to costs, because he has substantially succeeded in his suit.