## Supreme Lodge Knights of Honor *v.* Hahn.

[No. 6,289.   Filed May 26, 1908, Rehearing denied November 20, 1908.   Transfer denied January 12, 1909.]

1. INSURANCE.—*Mutual Benefit Associations.—By-Laws.—Neglect to Pay Dues at Proper Time.—Custom.*—The failure of a member of a beneficial order to pay his dues on a certain day forfeits his rights to his insurance, where the by-laws so provide, regardless of a custom of the subordinate lodge, where the dues are paid, to receive such dues at a later time, there being no showing that the supreme lodge sanctioned such custom. p. 80.

2. INSURANCE.— *Beneficial Associations.— Dues.— Collection of.*— Members of a fraternal beneficial association cannot be compelled to pay their dues, the only remedy being a forfeiture of membership and privileges. p. 81.

3. INSURANCE.— *Beneficial Associations.— Dues.— Retention of.— Forfeiture.—Waiver.*—The retention of dues, by a beneficial association, received from assured after a right of forfeiture exists, waives such right. p. 81.

4. INSURANCE.—*Mutual Benefit Associations.—By-Laws.—Forfeitures.*—Where a mutual benefit certificate holder failed to pay his March dues as required by the by-laws, and failed afterwards to ask to be reinstated as provided in such cases, he thereby forfeits such certificate, and an offer later to pay his arrearages, as had been customary for him and others to do, does not affect such forfeiture. p. 82.

From Superior Court of Vanderburgh County; *Alexander Gilchrist*, Judge.

Action by Anna A. Hahn against the Supreme Lodge Knights of Honor. From a judgment for plaintiff, defendant appeals. *Reversed.*

*DeBruler, Welman & DeBruler* and *Frederick H. Bacon,* for appellant.

*G. K. Denton, W. D. Robinson* and *W. D. Hardy,* for appellee.

RABB, C. J.—The appellant is a fraternal beneficial association. Jacob P. Hahn was a member of the association, and held a benefit certificate therein which named the appellee as the beneficiary. Said Hahn died on November 10, 1905, and this action was brought in the court below by the appellee upon the certificate.

The appellant answered in four paragraphs. The appellee replied in two paragraphs. The cause was submitted to a jury for trial, verdict returned in favor of the appellee, appellant's motion for a new trial overruled, and judgment rendered in favor of the appellee on the verdict. No question is raised in this court on the sufficiency of the pleading, and the sole question presented by the record for our consideration arises upon appellant's motion for a new trial, the overruling of which is assigned as error here. Among the causes assigned for a new trial are that the verdict is not sustained by the evidence, and that the verdict is contrary to law.

The evidence is set out in the record, and shows without contradiction that the appellant is a fraternal beneficial order governed by a constitution and by-laws; that there are within the organization several distinct bodies having distinct offices to perform, the Supreme Lodge being the governing body; that one of the objects of the order is to provide for the payment of a sum of money to the person named by the member in a benefit certificate issued to him by the Supreme Lodge upon the death of the member holding such certificate who has complied with all the laws, rules and

regulations of the order; that this payment is to be made from a distinct fund provided by the laws of the order for that purpose, known as the "Widows' and Orphans' Benefit Fund," and which is derived solely from monthly assessments made upon the members holding such certificates; that the control of this fund is under the exclusive management of the Supreme Lodge; that one of the bodies forming a part of this order is the local or subordinate lodge, which has a distinct organization of its own; that the monthly assessments for the maintenance of the widows' and orphans' benefit fund are not paid directly by the members to any officer of the Supreme Lodge, but are paid to the financial reporter of the local lodge, who turns them over to the treasurer of the local lodge; that the laws of the order fix the monthly assessments, and require each member to pay such assessments, without notice, to the financial reporter of his lodge on or before the last day of each month, and each local lodge is, under the laws of the order, responsible to the Supreme Lodge for the assessment of all members reported by the officers of the local lodge to be in good standing; that on or before the 10th day of each month the treasurer of the local lodge was required to transmit to the treasurer of the Supreme Lodge all assessments paid over to him by the members on account of the widows' and orphans' benefit fund, and to transmit with the funds a report showing the number of members of the local lodge in good standing, with the names of those who since the last report had died or had been suspended, but not the names of the members of the lodge in good standing, and the amount of the assessment so transmitted was required to correspond with the number of members reported in good standing in the lodge; that this report was required to be signed by the treasurer, the reporter and the financial reporter of the local lodge. It is disclosed by the evidence that the only means the Supreme Lodge had of knowing the names of members who had failed to pay their assessments in accordance with the provisions

of the laws of the order was this report made by the treasurer and the financial reporter.

It is shown that in the year 1882 Jacob P. Hahn became a member of the order, and that the certificate sued upon was issued to him by the Supreme Lodge; that he continued to be a member of the lodge in good standing until March, 1904, when he was suspended for failure to pay the January and February assessments for that year; that upon his application, made in conformity with the rules and laws of the order, he was on March 22, 1904, unconditionally reinstated by his lodge; that he afterwards failed to pay the April and May assessments for that year, and was reported by the officers of the local lodge in their monthly report to the Supreme Lodge for the month of May following, made on May 12, as suspended for failure to pay the April assessment; that on June 8, 1904, Hahn's daughters, acting for him, offered to pay to the financial reporter of the local lodge the April and May assessments against Hahn, which payment the reporter declined to receive, stating at the time that their father had been suspended for nonpayment of the April assessment, and that it would be necessary that he should be reinstated; that the financial reporter testified, and his testimony is undisputed and there is no just ground for disbelieving it, that on June 10 he had a conversation with Hahn, in which he urged Hahn to apply for reinstatement in the lodge; that Hahn said in answer to him that he (Hahn) had just been to St. Louis, and that the order was in bad shape; that he would outlive the order, and there was no use of paying another cent, and that he would not pay another cent; that, upon further urging, Hahn told him (the witness) that he would make up his mind between then and Tuesday, and if he did not see him on Tuesday he never expected to become a member of the lodge again. Hahn made no application for reinstatement, never made or offered to make further payment of any kind to the lodge, nor did any act that in any way tended to show that he re-

garded himself as a member of the lodge, or under any obligation to bear any part of its burdens.

Section three of article eight of the constitution of the order required every member of the order, without notice, on or before the last day of each month, to pay to the financial reporter of the lodge of which he was a member one assessment, according to the rules of the order fixing such assessment.

Section five of article eight of the law of the order was as follows:

"Any member failing to pay any regular or additional assessment required by the laws of the order shall thereby stand suspended, without action of his lodge or any officer thereof, and shall not thereafter be entitled to the benefit of the widows' and orphans' benefit fund, or of any rights under any benefit certificate issued to him, until he shall have been duly reinstated in accordance with the provisions of this article.

Section twelve of said article provides as follows:

"Any member of this order suspended for nonpayment of dues, fines or assessments, desiring to be reinstated, must, within one year after his suspension, make application in writing, either by himself or agent, to his lodge, at a stated or special meeting thereof, which application shall be acted on at such meeting of the lodge, when the applicant may be reinstated upon the following conditions only: If less than forty-five days have elapsed since the date of his suspension his application for reinstatement shall be accompanied by the amount in arrears for dues, fines, and all assessments made during his suspension, including the assessment or assessments on which he was suspended. In all such cases the subordinate lodge shall have a right to require a medical examination. * * * A ballot shall be ordered in all cases, and if a majority of the ballots cast are favorable the applicant shall be reinstated, but if either the medical examination or the ballot be unfavorable the applicant shall stand suspended."

The evidence further discloses that of 171 monthly assessments paid by Hahn from 1890 to April, 1904, ninety-eight

of them were made to and received by the local financial reporter after the time fixed by the laws of the order for their payment, some of them two or three months after they were due. It is not made clearly to appear whether the Supreme Lodge knew of such custom on the part of the local financial reporter. It does not appear that any of the reports made by the local officers to the Supreme Lodge prior to March, 1904, reported Hahn as delinquent in the payment of his assessments and not in good standing. It does appear that the local lodge frequently paid to the Supreme Lodge assessments for its members, including Hahn. There is no proof of any express agreement on the part of the association that Hahn might be permitted to pay his assessments otherwise than as required by the laws of the assocation and the contract, but it is contended by the appellee that by the indulgence extended to Hahn in the matter of the payment of the monthly assessments appellant deprived itself of the right to insist upon the payment of such assessments as the laws of the order and the contract between the parties contemplated, the theory being that by such long-continued course of dealing the appellant misled Hahn into believing that it would permit him to pay the assessments at any time within sixty days after they were in fact due, and that, having been so misled into neglecting the payment of his assessment as required by the plain and well-known terms of his contract and with the laws of the association, and upon the refusal of the local financial reporter to receive his assessments thereafter tendered, he might safely refrain from taking any further action whatever for reinstatement, or notifying the lodge in any manner of his recognition of his obligation to bear his part of the burdens of the order and the maintenance of the insurance fund and still retain his insurance.

We cannot agree with this contention. The very life of this order, so far as it undertakes to furnish life insurance to its members, depends upon the maintenance of the

widows' and orphans' benefit fund. This could only be done by the payment on the part of the members of the order of their monthly assessments for that purpose, and each and every member of the order had the right to insist that every other member should pay his assessments as the law of the order required. The Supreme Lodge in this matter stood as the representative of all the members, and it owed the duty to them to require that assessments be paid by each member as the law of the order requires. The only means by which the order could enforce the payment of the assessments was by virtue of that law of the order that denies to the members the benefit of the insurance unless the assessments were paid, as required by its terms. The contract was unilateral.

The association could not go into court and sue Hahn for his April and May assessments. He was under no legal obligation to pay them, and no legal remedy is open to the order for their enforcement. *Union Mut. Life Ins. Co.* v. *Adler* (1906), 38 Ind. App. 530, and cases cited.

While we recognize the fact that it has been held that where an insurance company receives premiums or assessments after the forfeiture of the contract could have been claimed by the company on account of the failure of the insured to pay the premiums or assessments within the proper time, or where by its course of dealing with the insured the insurance company treats the contract as a valid and subsisting contract after it might have been declared forfeited for failure on the part of the insured to comply with some requirement in the contract of insurance, and thereby misleads the insured to his injury into believing that the contract still subsists, as illustrated in the cases of *Sweetser* v. *Odd Fellows, etc., Assn.* (1889), 117 Ind. 97, and *Painter* v. *Industrial Life Assn.* (1892), 131 Ind. 68, and cases there cited, we think the facts in this case bring it far without the rule applied in those cases.

Here, while it appears that the deceased, Hahn, was often

indulged by the financial reporter of the local lodge in the payment of his monthly assessments prior to 4. March, 1904, yet it is by no means clear that the Supreme Lodge had knowledge of such indulgence. Hahn was not only bound to know the laws of the order requiring him to make monthly payment of the assessments, but the evidence shows that he was familiar with them, and after his suspension for nonpayment of dues in the month of March he had no right to assume that he could with impunity disregard the provisions of the contract in reference to the payment of dues. He would not be permitted, nor would his beneficiary thereafter be permitted, to say that he was misled into believing that he would not be suspended if he failed to comply with the rules of the order in reference to such payment, and it here appears from the evidence that no advantage was taken of Hahn by the order. He was notified of his suspension in ample time to make application to his lodge for reinstatement within the forty-five days when such reinstatement could have been made without imposing any conditions whatever upon him. Good faith and common fairness required that he should at least give his lodge the opportunity to reinstate him, as it had done a few months before, if he desired to continue his relations with it. There is no good reason to suppose that the lodge would have refused a reinstatement, or required him to submit to a medical examination; but if they had arbitrarily refused to reinstate him, or had imposed conditions that made his reinstatement impossible, then he might, with some degree of justice, claim that his suspension was wrongful, and left him without a remedy. But until this plain and simple remedy was exhausted, neither he nor his beneficiary can be heard to say that he was still a member of the lodge in good standing. To hold otherwise would be to allow Hahn, while in no manner bound to pay assessments or bear any other burden of the association, still to retain all the benefits that accrued to

members who paid their dues and assessments and bore the burdens of the order. It would require the association to pay the policy or certificate, while no reciprocal obligation rested on Hahn to pay assessments, for no one could pretend that, upon the facts exhibited by the evidence, that the appellant could at any time have enforced the payment of the assessments against Hahn, or against his estate after his death.

By failing to make application for reinstatement Hahn must be taken to have acquiesced in his suspension, and thereby terminated the contract.

Judgment reversed, with instructions to the court below to sustain the motion for a new trial.

Roby, J., absent.