(101 So. 914)

### SOVEREIGN CAMP OF W. O. W. v. CARRELL. (6 Div. 975.)

(Court of Appeals of Alabama. Oct. 28, 1924.)

**1. Appeal and error ⬄1040(4)—No prejudicial error in sustaining demurrers where remaining counts contained all material averments.**

Where remaining counts in complaint contained every material averment in counts to which demurrers were sustained, plaintiff could not complain of prejudicial error in rulings on demurrers.

**2. Insurance ⬄755(3)—Collection of assessments after suspension held not to bind society, and retention without knowledge of facts not to constitute waiver.**

Under Acts 1911, p. 700, § 20, acceptance by clerk of local camp of assessments on fraternal benefit certificate, after they were due, and member was automatically suspended, *held* not to bind society, and acceptance and retention by society without knowledge of facts not to waive conditions of reinstatement.

**3. Insurance ⬄719(1)—Rights of beneficiary in certificate are subject to power reserved in certificate to amend constitution and laws.**

Since insurance contract is source from which all rights of beneficiaries flow, rights under fraternal benefit certificate in hands of beneficiary, even if vested, are subject to power, reserved in certificate, to amend constitution and laws, provisions of which are elements of contract.

**4. Insurance ⬄712—Nebraska laws control significance of constitution, charter, etc., of Nebraska mutual society as determining rights of beneficiary.**

Nebraska laws were integrally and necessarily resorted to to ascertain significance of constitution, charter, etc., of Nebraska mutual society, as determining rights of beneficiary under benefit certificate.

**5. Evidence ⬄373(2)—Admission of printed copies of constitution and by-laws of benefit society, with name of Sovereign Clerk printed thereon, held erroneous.**

Under Act 1911, p 700, § 22, printed copies of constitution and by-laws of mutual society, as amended, must be certified by Sovereign Clerk in his own handwriting to be admissible, and admission of printed copies, with clerk's name printed thereon, was erroneous.

**6. Evidence ⬄373(2)—Admission of copies of constitution and by-laws of society on testimony of local clerk held erroneous.**

Though benefit society may prove adoption of amendment to by-laws by officers, members, etc., present at, and testifying to, adoption, admission of purported printed copies of constitution and by-laws, on testimony of local clerk, not shown to have knowledge of correctness thereof, was erroneous.

**7. Insurance ⬄817(1)—Ultra vires plea in action on certificate dependent on proof of constitution and laws of benefit society.**

In action on benefit certificate, failure to properly prove constitution and by-laws of society caused failure of proof of special plea that provision in certificate, terminating assessments after 20 years, was ultra vires.

**8. Insurance ⬄719(1)—Failure to file amendments with secretary of state did not prevent operation from date of adoption.**

Failure to file certified copy of amendments to constitution and laws of mutual benefit society in office of secretary of state, as required by Act 1911, p. 700, did not prevent their operation from date of adoption.

Appeal from Circuit Court, Jefferson County, Bessemer Division; J. C. B. Gwin, Judge.

Action on a policy of life insurance by Alexander S. Carrell, Jr., against the Sovereign Camp of the Woodmen of the World. From a judgment granting plaintiff's motion for a new trial, defendant appeals. Affirmed.

C. H. Roquemore, of Montgomery, for appellant.

The decision of the Nebraska court is binding upon the courts of this state in the construction of the laws of the society. Trapp v. Sov. Camp, 102 Neb. 562, 168 N. W. 191; Hartford Life, v. Ibs, 237 U. S. 663, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765; Supreme Lodge v. Mims, 241 U. S. 574, 36 S. Ct. 702, 60 L. Ed. 1179, L. R. A. 1916F, 919; Haner v. Grand Lodge, 102 Neb. 563, 168 N. W. 189; Hartman v. Nat. Council, 76 Or. 153, 147 P. 931, L. R. A. 1915E, 152; Hall v. Western Travelers, 69 Neb. 601, 96 N. W. 170; Stark v. Sov. Camp, 189 Ky. 719, 225 S. W. 1063. The clerk of the camp has no authority to waive the time of payment. Trapp v. Sov. Camp, supra; Hardy v. Sov. Camp, 17 Ala. App. 53, 81 So. 690; Sov. Camp v. Allen, 206 Ala. 41, 89 So. 58; Sov. Camp v. Eastis, 206 Ala. 49, 89 So. 63; Woodmen of the World v. Alford, 206 Ala. 18, 89 So. 528; Woodmen of the World v. Maynor, 206 Ala. 176, 89 So. 750; Sov. Camp v. Blanks, 208 Ala. 449, 94 So. 554; Sov. Camp v. Ballard, 19 Ala. App. 411, 97 So. 895. A member cannot rely upon a course of dealing, but must pay as the law requires. Sup. Lodge v. Hahn, 43 Ind. App. 75, 84 N. E. 837; Brotherhood v. Dee, 101 Tex. 597, 111 S. W. 396; Sov. Camp v. Shaw, 143 Ga. 559, 85 S. E. 827; Boyce v. Royal Circle, 99 Mo. App. 349, 73 S. W. 300; Bost v. Sup. Council, 87 Minn. 417, 92 N. W. 337; Harvey v. Grand Lodge, 50 Mo. App. 472; Grand Lodge v. Jesse, 50 Ill. App. 101; Modern Woodmen v. Tevis, 117 F. 369, 54 C. C. A. 293.

Huey & Welch, of Bessemer, for appellee.

The policy sued on is not subject to Acts 1911, p. 700. S. R. v. Darwin, 201 Ala. 687, 79 So. 259; 19 R. C. L. 1278; W. O. W. v. Adams, 204 Ala. 667, 86 So. 741; U. O. G. C. v. Hooser, 160 Ala. 334, 49 So. 354; S. M. L. v. Riley, 157 Ala. 553, 47 So. 735; Beiser v. W. O. W., 199 Ala. 41, 74 So. 235; W. O. W. v. McHenry, 197 Ala. 541, 73 So. 97; Nat. Ins. Co. v. Sherry, 180 Ala. 627, 61 So. 944. Printed copies of the constitution were improperly admitted in evidence. Acts 1911, p. 700; Beason v. W. O. W., 208 Ala. 276, 94 So. 123. The contract was an Alabama contract, and the decisions of Nebraska are without application. 2 Cook on Corp. (6th Ed.) 2152; Hitchcock's Heirs v. U. S. Bank, 7 Ala. 386; C. L. Ins. Co. v. Webb, 54 Ala. 698; 19 R. C. L. 1314; Niblack on Ben. Soc. (2d Ed.) 20; 3 Michie's Dig. Ala. Rep. 560; 9 Michie's, 173; 14 R. C. L. 891; 5 R. C. L. 972. The corporation, having received and retained benefits, cannot take advantage of the fact that its act was ultra vires. Niblack, supra; Patrick v. Petty, 83 Ala. 420, 3 So. 779; First Bank v. Alexander, 152 Ala. 585, 44 So. 866; 3 Michie's Ala. Dig. 560; Dromgold v. R. N. of A., 261 Ill. 60, 103 N. E. 584; Love v. W. O. W., 259 Ill. 102, 102 N. E. 183, 6 A. L. R. 531; McMahon v. McAbees, 151 Mo. 522, 52 S. W. 388. The former dealing was sufficient to put defendant on notice that collections were being made late. Edmiston v. The Homesteaders, 93 Kan. 485, 144 P. 826, Ann. Cas. 1916D, 588; Mod. Woodmen v. Tevis, 111 F. 113, 49 C. C. A. 256; Modern Woodmen v. Tevis, 117 F. 369, 54 C. C. A. 293; 19 R. C. L. 1243; 29 Cyc. 191.

FOSTER, J. This was an action to recover $900 alleged to be due the plaintiff (appellee) under a beneficiary certificate or policy of life insurance issued on April 29, 1895, by the defendant (appellant), a fraternal beneficiary association, on th life of Alexander S. Carrell, a member of the association, the plaintiff being the beneficiary in such certificate, and the alleged member of the association having died September 12, 1920.

The trial court gave the general affirmative charge for the defendant, and after verdict the court on motion of the plaintiff set aside the verdict and granted a new trial. This is an appeal from the judgment granting a new trial.

[1] The complaint contained 10 counts. The court sustained demurrers to all of the counts except those numbered 5, 6, and 10. Counts 5 and 6 are substantially in the form prescribed by the Code (Code 1907, § 5382, form 12), and count 10 states fully the plaintiff's cause of action. The counts to which demurrers were sustained were in the main repetitions of the averments of counts 5 and 6, and we find that counts 5, 6, and 10 contain every material averment contained in counts 1, 2, 3, 4, 7, 8, and 9, to which demurrers were sustained. The plaintiff, having had the benefit in the counts on which he was put to trial of every material averment in the counts to which demurrers were sustained, cannot complain of any prejudicial injury in the rulings of the court on the demurrers. The pleadings were very voluminous. There were many special pleas, replications, rejoinders, and surrejoinders, and demurrers to practically all. If there were errors in the rulings on pleadings both plaintiff and defendant had the benefit in pleading and evidence of every material issue in the case. We do not deem it necessary to specifically treat these pleadings and the rulings thereon, as a general statement of the facts therein disclosed will suffice.

The certificate was issued on the life of A. S. Carrell on April 29, 1895, at which time he was 51 years of age. Insured and his son, A. S. Carrell, Jr., the beneficiary in the certificate, paid all assessments for more than 25 years. The certificate contained a provision that payments of assessments should cease after 20 years. Insured continued to pay the assessments after the expiration of 20 years. Many times two or three assessments were paid at a time, and after their due date. The member was never entered on the books suspended but one time, and the clerk of the local camp, finding that he was in error, corrected the error, and never reported the suspension to the Sovereign Clerk. The clerks of the local camp had for several years collected from the member two or three assessments at a time either before or after they were due, and sometimes the camp funds took care of the member's assessments until they were paid by him. The clerk of the local camp was in the habit of calling on A. S. Carrell, Jr., for his father's assessments, and Carrell, Jr., paid them whenever the clerk called. The member was an old man 76 years of age, and there is no contention that his assessments were in arrears before July 31, 1920. On August 14, 1920, the clerk called on Carrell, Jr., for the payment of assessments, and collected for the assessment made July 1, 1920, and in default July 31, 1920, and also for the August assessment, which paid to August 31. On August 15 the local clerk forwarded to the Sovereign Clerk the assessments of the members for July, and on September 15 forwarded the assessments for August, and the member was reported in good standing. The Sovereign Clerk retained these moneys until December 8, 1920, after proofs of death had been made, after which time the discovery was made that the July and August assessments had been paid on August 14. It had been a custom for the clerk to forward the assessments between the 10th and 20th of the month, although the laws of the society required that the assessments for the preceding month must be forwarded within the first 5 days of the succeeding month. No objection to this course of dealing of the clerk was made by any of the sovereign officers, but the assessments had always been retained by the Sovereign Clerk. The sovereign officers had not been informed of any custom of the clerk of the local camp to collect dues and assessments after they were delinquent, or of his failure to report as suspended a delinquent member.

The July and August assessments were paid on August 14th. The member was in default on July 31, and under the constitution and laws of the society was automatically suspended on August 1st, and the payment to the clerk on August 14th did not reinstate him; there was no written statement or certificate of health, and he was not in good standing at the time of his death, September 12th. The above matters of defense were set up by appropriate pleas. The plaintiff sought by appropriate pleading to show that the sovereign officers waived the matters set up in the special pleas by accepting and retaining the money with full knowledge of all the facts, and by the conduct of the clerk of the local camps in the manner in which he customarily made collections and forwarded money. Many of the questions raised in this record have been repeatedly decided by this court and the Supreme Court, and it will not be profitable here to discuss the reasons for such decisions, but it will suffice to state the principle decided and cite one or more authorities. We will discuss more fully the novel questions presented.

[2] The action of the local clerk was without any binding effect upon the defendant society. Acts 1911, p. 700, § 20; Sov. Camp v. Gay, 207 Ala. 610, 93 So. 559; Yarbrough v. Sovereign Camp, 210 Ala. 188, 97 So. 654; Sovereign Camp v. Ballard, 19 Ala. App. 411, 97 So. 895.

The clerk of a local camp has no authority to waive the time of payment of assessments. Hardy v. Sov. Camp, 17 Ala. App. 53, 81 So. 690; Sov. Camp v. Allen, 206 Ala. 41, 89 So. 58; Sov. Camp v. Eastis, 206 Ala. 49, 89 So. 63; Sov. Camp v. Alford, 206 Ala. 18, 89 So. 528; Sov. Camp v. Maynor, 206 Ala. 176, 89 So. 750; Sov. Camp v. Blanks, 208 Ala. 449, 94 So. 554; Sov. Camp. v. Ballard, 19 Ala. App. 411, 97 So. 895. A member must pay assessments as the law requires, and a habit of a clerk of a local camp to call for payment after delinquent does not bind the Sovereign Camp. A member cannot rely upon a former course of dealing by which his camp or local clerk had been advancing money to pay assessments. He is required to pay according to the laws of the society. Sup. Lodge K. of H. v. Hahn, 43 Ind. App. 75, 84 N. E. 837.

That a local clerk of a mutual benefit association accepted payment of certain assessments after they should have been paid did not constitute a waiver of the right to forfeiture of the contract for failure to pay a subsequent assessment. Hay v. People's Mutual Benev. Ass'n of North Carolina, 143 N. C. 256, 55 S. E. 623. None of the acts of the clerk of the local camp relied on were acts of the corporation, but were done by a clerk who had no authority to waive the express provisions of its laws. Acts 1911, p. 700, § 20; Lyon v. Sup. Assembly Royal Society, 153 Mass. 83, 26 N. E. 236.

Under the constitution and laws of the defendant society the acceptance and retention of the money by the Sovereign Clerk until December 8, 1920, after proofs of death were made and immediately after discovery that the July assessment was not paid until August 14, did not constitute a waiver of the conditions of reinstatement. Sov. Camp v. Gay, supra; Yarbrough v. Sov. Camp, supra;

Sov. Camp v. Adams, 204 Ala. 667, 86 So. 737; Sov. Camp v. Tucker, 206 Ala. 562, 90 So. 801.

[3] The certificate of insurance provided that it was subject to the constitution and laws of the society then existing and to all amendments which might be thereafter adopted. Whatever right the insured and the beneficiary had was subject to the conditions, limitations, and restrictions of the charter and laws of the society, which are factors of the contract, and the right, even if it should be conceded to be a vested one in the strictest sense, would, in the hands of the beneficiary, be subject to the provision that changes in the constitution and laws may be made, since the contract is the source from which all rights flow. And a person who becomes a member of a fraternal benefit society which issues to him a certificate of insurance in which it is made clear that the right to amend its constitution and by-laws is reserved to it is bound to take notice of the existence and effect of that reserved power. The provisions of the constitution and laws of the society were elements of the contract of insurance, and there was no destruction of any vested right because the power to amend was, as reserved, a part of the contract, and the same rules applied to all members similarly situated. Sup. Lodge v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409; W. O. W. v. Alford, 206 Ala. 18, 89 So. 528.

Raising the rate of assessment on a member of a mutual benefit society by change of by-laws does not impair his contract, where the by-laws to which he agreed required him to conform to the laws then in force or which might be thereafter adopted. Reynolds v. Sup. Council, 192 Mass. 150, 78 N. E. 129, 7 L. R. A. (N. S.) 1154.

The charter was a Nebraska charter, and the controlling character of the laws of that state on its operation and effect were asserted by way of defense in the pleadings. The defendant alleged that the provision in the certificate or policy that payment of assessments should cease after 20 years was ultra vires of the corporation and void; that no power existed in the corporation to issue beneficiary certificates known as limited payment insurance, or to issue any other benefit certificate except upon payment by members holding the same of all dues and assessments levied during the lifetime of the member and while he continued a member of the society; and that the provision in the certificate for payment to cease after 20 years had been declared ultra vires and void by the Supreme Court of Nebraska, and offered in evidence certified copy of the record in the case of Trapp v. Sovereign Camp Woodmen of the World, and the judgment of the Supreme Court of Nebraska in that case. Trapp v. Sov. Camp, W. O. W., 102 Neb. 562, 168 N. W. 191.

The solution of the question involves two considerations: First, was the matter in controversy to be determined by the Nebraska charter, laws and judgment; and, second, if so, did they declare the provision of the certificate for payment to cease after 20 years ultra vires of the corporation.

[4] The corporation was exclusively of a fraternal and beneficiary character, and all the rights of the plaintiff concerning the assessments to be paid to provide for a fund from which such beneficiary certificates should be paid had their source in the constitution and by-laws, and their validity could be ascertained only by a consideration of the constitution and by-laws. As the charter was a Nebraska charter and the constitution and by-laws were a part thereof adopted in Nebraska, having no other sanction than the laws of that state, those laws were integrally and necessarily to be resorted to for the purpose of ascertaining the significance of the constitution and by-laws. Chief Justice Marshall more than 100 years ago stated the principle involved (Head v. Providence Life Insurance Co., 2 Cranch, 127, 2 L. Ed. 229) as follows:

"Without ascribing to this body, which in its corporate capacity is the mere creature of the act to which it owes its existence, all the qualities and disabilities annexed by the common law to ancient institutions of this sort, it may correctly be said to be precisely what the incorporating act has made it, to derive all its powers from that act, and to be capable of exerting its faculties only in the manner which that act authorizes. To this source of its being, then, we must recur to ascertain its powers."

The courts of last resort in many states of the Union have recognized the charter of the corporation and the laws of the state under which it was granted as the test to be applied in questions involving the general authority of fraternal associations and their duties as to subjects of a general character concerning all their members. Supreme Lodge v. Hine, 82 Conn. 315, 73 A. 791; Palmer v. Welch, 132 Ill. 141, 23 N. E. 412; Royal Arcanum v. Brashears, 89 Md. 624, 43 A. 866; Golden Cross v. Merrick, 165 Mass. 421, 43 N. E. 127; Supreme Lodge v. Nairn, 60 Mich. 44, 26 N. W. 826; Tepper v. Royal Arcanum, 59 N. J. Eq. 321, 45 A. 111; Bockover v. Life Association, 77 Va. 85.

The charter of the corporation was a Nebraska charter, and the laws of Nebraska control in determining the powers of the corporation and the rights and duties of its members thereunder.

In the Trapp Case, supra, the Supreme Court of Nebraska declared the provision in the certificate that payment should cease after 20 years was ultra vires of the corporation and void. Trapp Case, supra; Haner v. Grand Lodge, A. O. U. W., 102 Neb. 563, 168 N. W. 189.

Section 8 of an act approved April 24, 1911 (Acts 1911, p. 700), reads as follows:

"Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or if a voluntary association, the articles of association, the constitution and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member and copies of the same certified by the secretary of the society, or corresponding officer, shall be received in evidence of the terms and conditions thereof and any changes, additions or amendments to said charter or articles of incorporation, or articles of the association, if a voluntary association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member and his beneficiary, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were enforced at the time of the application for membership."

[5] The applicable portion of section 22 of the act of 1911, supra, reads as follows:

"Printed copies of the constitution and laws as amended changed or added to, certified by the secretary or corresponding officer of the society shall be prima facié evidence of the legal adoption thereof."

Printed copies of the constitution and laws as amended must be certified by the secretary or corresponding officer of the society before they become prima facie evidence of the legal adoption thereof, and it is not a compliance with this statute to offer printed copies to which is attached a certificate purporting to be made by the Sovereign Clerk where his name is also printed. The printed copies must be certified by the clerk under his own hand in writing. The court erred in admitting in evidence the printed copies of the constitution and laws of the society without proper certification by the Sovereign Clerk.

[6] The court erred in admitting in evidence what purported to be printed copies of the constitution and laws of the Sovereign Camp upon testimony of a clerk of a local camp, who was not shown to have any knowledge of their correctness.

A voluntary association may prove the adoption of amendments to its by-laws by officers, members, etc., who were present, and who testify that they were adopted at the time and in the manner prescribed therefor. Masonic Mutual Benefit Association v. Severson, 71 Conn. 719, 43 A. 192.

[7] In the instant case a clerk of a local camp without preliminary proof that he had any knowledge whatever on the subject, was handed a printed pamphlet and asked merely, "Is that the constitution there you got?" We know of no rule of evidence authorizing the proof of the constitution and by-laws of a mutual benefit society in this manner. Without legal proof of the constitution and laws of the defendant society there was failure to prove the defendant's special pleas.

The beneficiary in a suit on certificate or policy of life insurance cannot recover for price of monument to be erected by the association, but it has been held that suit may be brought for breach of contract. Sov. Camp, W. O. W., v. Craft, 208 Ala. 467, 94 So. 831.

[8] The failure to file a certified copy of the 1919 amendments to the constitution and laws of the society in the office of the secretary of state as required by the act of 1911 did not prevent the operation of the amendments from the date of adoption.

For the errors indicated the court properly set aside the verdict for the defendant and granted a new trial.

Affirmed.