## Case No. 5,027.

FRANCE et ux. v. AETNA LIFE INS. CO. (two cases).

[20 Pittsb. Leg. J. 170; 2 Ins. Law J. 657; 18 Int. Rev. Rec. 32.]

Circuit Court, E. D. Pennsylvania. May 16, 1873.[1]

Nathan Sharpless, for plaintiffs.

Christian Kneass and Samuel C. Perkins, for defendant.

CADWALADER, District Judge. These were separate actions tried together by consent, on two policies of insurance each for $10,000, made by defendants on the life of Andrew J. Chew for the benefit of his sister Mrs. Lucetta T. France. The application and the policy issued thereon in the first of above cases were dated September 13, 1865, and in the second case July 12, 1865. The applications and policies were alike in both cases, and the defences, so far as regarded the questions affecting the force and effect of the contracts themselves, were the same. There was a special and distinct question in Selvage's case arising out of his position as assignee, or alleged purchaser for a valuable consideration of the policy sued on to his use.

There were three grounds of defence mainly insisted upon: First.—Want of interest on the part of the plaintiff in the life insured. Second.—Misrepresentation and concealment of the fact that the party insured had been ruptured, and actually was so at the time the applications were made. Third.—Misdescription of the age of the party insured, making him seven years younger than he really was. The premiums on both policies were regularly paid up to the time of the death. On the policy assigned to Selvage they were all cash; on the other one-half note. The money was paid and the notes executed for the premiums by Mrs. France. As to the want of interest, it appeared that Mrs. France, at the time the policies were issued, and up to the time of trial was a married woman, and in no respect dependent on her brother whose life was insured; nor was there any evidence of any indebtedness on his part to her, either prior or subsequent to the applications for insurance.

The defendants requested the judge to charge: "That if the applications and policies were in fact made and taken out by Mrs. France for her own benefit, she must show an insurable interest in the life of Chew; and if she was a married woman and

[1] [First case reversed in 91 U. S. 510. Second case affirmed in 94 U. S. 561.]

in no way dependent on him for support; the mere fact that she was his sister did not give her such insurable interest; and that if Chew at the time the applications were made and policies issued was not indebted to her, then she had no insurable interest as a creditor in his life."

The judge declined to charge as requested, but charged as follows: "If Chew at the time of the insurance was unmarried and without issue or parent living, the insurance for the benefit of his sister was valid if the risk insured was properly described in the policies. As men of business you will see the importance of this last remark. There are persons who may be described as presumptively next of kin, and who can insure the lives of their relatives; or if any lives may be insured by any persons it is of course of paramount and indispensable importance that the risk be correctly described." The policies each contained a clause making the proposal, answers and declaration in the application part of the policies, and with a condition that if false or fraudulent the policies should be void; and the judge instructed the jury that this clause made the answers to the question part of the contracts, and they had thus the effect of warranties, and if they were wholly or in any material respect false or fraudulent the plaintiffs could not recover. The words "in any material respect," he said, must be understood as meaning in any respect or degree material to the risk insured, whether as to age, or health, or otherwise howsoever.

In answer to a question, whether the insured had ever had any of certain specified diseases, among them "rupture," and if so how long and to what extent? the insured stated in the applications "None." The defendants alleged that he had been ruptured, and was ruptured at the time of the insurances, and much evidence was given on this point, as to which the judge gave the following instruction: "If the jury believe that Chew was ruptured at the time, or at any such previous period that the rupture may have been material to any question of the soundness of his health when his life was insured; or if at that time or within such prior period he wore a truss in order that it might repress hernial extrusion, the verdict should in either case be for the defendants. But though he was ruptured in 1846 and 1854, and although the rupture accidentally recurred in a worse form, in 1870, from an extraordinary exertion of strength in lifting a heavy weight, yet if the jury find that from 1855 or thereabouts until after the last insurance in 1865, he had no such disease, and was in all this interval in the habit of working and using bodily exercise, and occasionally dancing, bathing and traveling, and could walk long distances without being fatigued, and either did not wear a truss or wore it only from continuance of early habit; that his health was not impaired or affected by the former rupture; that it would

not if mentioned have increased the risk or the premium, and that there was in this respect no falsehood or wilful suppression, I cannot give the instruction absolutely that the answer 'None' to the question was untrue or false. I have doubts whether I have not charged too favorably for the plaintiffs on this point. My chief difficulty is that the next question is, whether the party is subject to 'habitual' diseases mentioned in the same, as if there were a distinction between 'habitual' and ever having had them."

Upon the third ground of defence the defendants requested the court to instruct the jury: "That if the answers in the applications to questions four and five, as to the date of birth and age next birthday of Chew were false or untrue, the policies are void, and the verdict must be for the defendants."

The judge instructed the jury as follows: "If you believe that the answers to these questions were materially untrue as to the age of Chew, the policies are void, and the verdict must be for the defendants; and if he was thirty-seven or even thirty-five years old, the difference was not immaterial. I give the instruction as requested. There are two distinct questions in the application. '4. Place and date of birth of the party whose life is to be insured. 5. Age next birthday.' A good deal has been said about the uncertainty this man was under as to his age. I cannot say that was any reason he should be careless in describing his age, but, on the contrary, he ought to have been the more careful. I agree that if he had described his age as uncertain, the defendants must have abided by the contract as made. But this is not the contract; he is not described as a person of uncertain age. As to the insurance of July his answer to question five is simply 'Thirty years,' and his answer to question four, 'Born in 1835, Gloucester county, New Jersey,' and there is interlined between '1835' and 'Gloucester county, New Jersey,' the words 'October 28th.' Mr. Scott, the agent who took the application, has explained how that occurred. He says Chew said it was as near as he could recollect, and although he states there was no doubt at all about the year, he says there was a difficulty in determining the day of the month. Now, though this application does not contain the words 'as near as I can recollect,' I think under the circumstances of the case you are at liberty to read it as if they were there. I don't think it makes any material difference whether they are there or not. As to the second application, the one in September, the answer to question four is, 'Born in New Jersey, 1835.' The fifth question is, 'What is your age next birthday?' and the answer, 'Thirty years. October 28, as near as I can recollect.' That certainly does not mean to apply to the thirty years; it means, according to fair reading, that he was born in 1835. It was the 28th October, as near as he can recollect. He signs at the foot of this appli-

cation, 'That is as near as I can remember,' applying to all the preceding questions. It is not a question of words but of fair meaning. If the man was a few months or even perhaps a year or two older than he states, it might not materially affect the risk; and even without the words 'as near as I can recollect' or 'remember,' if the difference was a slight discrepancy such as would not affect the risk, I should not think it a material difference, and certainly not when these words are contained in the application. But these words have not any indefinite meaning; they don't mean 'I am a person of uncertain age but am a person of the age of thirty years or thereabouts,' which in law means not materially different from that age."

The judge then reviewed and commented on the evidence respecting the age of the party insured. and added: "I do not see how you can decide this case upon the evidence, disregarding the fact that Chew was at least 35 or 37 years of age. If so the risk was materially misdescribed in these policies and the plaintiffs cannot recover except as to one of them, and that upon a special ground. This special ground applied to the first policy, issued in July, 1865, and upon which the second of the above suits was brought in the name of Selvage, who it was alleged, had bought this policy from Mrs. France, after the death of Chew, upon the faith of representations by the agent of defendants that it would be paid. The evidence showed that Selvage had lent Mrs. France $2,000 shortly before the death of Chew, and that the policy had been assigned to him as collateral for this loan; and that within a month after Chew's death he had paid Mrs. France the further sum of $7,280, and as he alleged, had then bought the policy absolutely from her on the faith of representations by the agent as above. The agent testified that not very long before the death of Chew there had been some intimations that there was suspicion as to the character of the risk, and that he had told Selvage that he had no authority to act, but that the claim would be paid if it was a just one."

The defendants requested the court to instruct the jury: "That if Selvage had loaned $2,000 to Mrs. France upon the security of an assignment. before the death of Chew, of this policy as collateral, the defendants could not be estopped by anything alleged to have occurred after Chew's death, from denying their liability as to this $2,000. That if before Selvage paid Mrs. France the $7,280, the agent of the company told him that he had no authority to act; that the matter was out of his hands. but that the policy would be paid if the claim was a just one, and unless Selvage fully disclosed the purpose and object of his inquiries as to the policy to the agent. the defendants are not estopped from denying their liability."

The judge gave these instructions as requested, but said that the words "fully disclosed" should be understood to mean "sufficiently disclosed to indicate the purpose and object." And added: "If the agent was the agent for the defendants to receive the preliminary proofs, and having received them knew that Selvage was negotiating with Mrs. France to purchase this policy, and by representing to him that the loss would be paid, induced him to pay her $7,280 for the assignment of it without any fraud on his part, or knowledge by him of the objections now made to his validity, then if the jury find that what passed was mutually understood and intended as a waiver of any such objections to the plaintiffs' recovery on this policy as have been made in the present trial, the jury may find for the plaintiffs on this policy, although the objections would otherwise have been fatal. There is great responsibility upon the jury on this part of the case. If you simply regard the testimony of the witnesses, it is very easy to understand the facts just as I have put them. But if you look carefully at the documents there is a great deal of difficulty in arriving at that belief. When you examine the documents you can get over the mistakes in the testimony of the witnesses. They may be partly explained perhaps by the fact of Selvage being deaf."

The judge then reviewed and commented on the testimony of the witnesses, and the documents in evidence, the letters, assignment, and the check with which the $7,280 was paid, and said: "The point in question is whether Selvage paid his money on the assurance of the agent of the company, and is in such a condition that the agent's mouth is stopped from telling the truth. Mrs. France could not confer any better title than she had herself, unless from something the agent said. What I ask your particular attention is whether the letters and the testimony together do not convince you that the only conversation that ever occurred with Selvage was before the preliminary proofs were in the hands of the company. If so you can scarcely understand the agent to have intended to waive objections."