(86 South. 737)

**SOVEREIGN CAMP, W. O. W., v. ADAMS.**
**(7 Div. 35.)**

(Supreme Court of Alabama. Oct. 14, 1920. Rehearing Denied Nov. 18, 1920.)

1. **Pleading ⇐221—Overruling demurrer to counts not a ruling to the complaint as a whole.**

The demurrer being to counts A and B of the complaint "separately and severally," the ruling overruling the demurrer is not to the complaint as a whole.

2. **Insurance ⇐815(1)—Complaint on benefit life certificate held to sufficiently plead ownership.**

Complaint in action on benefit life certificate sufficiently alleged its ownership in plaintiff, as required by Code 1907, § 5382, form 12, providing form for complaint on life policy, it alleging execution of life policy "payable to this plaintiff, as provided by the terms of said policy in the event of the death of the" assured.

3. **Insurance ⇐815(1)—Complaint on benefit life certificate held to sufficiently aver compliance by assured with conditions.**

Compliance by assured with the conditions of the benefit life certificate *held* sufficiently averred by the complaint thereon, stating all its material provisions, and alleging generally that assured complied with all its conditions required of him.

4. **Insurance ⇐815(1)—Enough to allege that exhibit attached is substantial copy of certificate.**

It is enough that complaint on a benefit life certificate alleged that the exhibit attached is a substantial copy of the certificate.

5. **Appeal and error ⇐737—Joint assignment to sustaining demurrers to pleas unavailing if one plea was subject to demurrer.**

That a joint assignment to the sustaining of demurrers to pleas may avail, there must have been error in sustaining demurrer to each plea; and if one of the pleas was subject to the demurrer interposed, the assignment will not avail.

6. **Insurance ⇐815(2)—Plea should aver condition from which an alleged default of assured followed.**

Plea to complaint in action on benefit life certificate should aver the condition or agreement from which an alleged default of assured followed and continued to his death.

7. **Insurance ⇐146(3)—Policies construed strictly against assurer.**

Insurance policies are construed strictly against assurer, and favorable to assured, especially with reference to forfeiture.

8. **Insurance ⇐371—New contract not created, but old continued by waiver of forfeiture for nonpayment of premium.**

Waiver of forfeiture for nonpayment of premium on the date it accrued does not create a new contract of insurance, but its effect

is to treat the original contract of binding force as if no cause of forfeiture had occurred.

**9. Insurance ☞764—New contract not created by reinstatement of fraternal benefit insurance.**

In case of reinstatement of fraternal benefit insurance, as by payment, in accordance with provision of constitution, within 10 days after suspension for failure to pay monthly installment of assessment, a new contract or certificate of insurance, dating from reinstatement, is not created, but the effect is the continuing of the original contract as if no cause of forfeiture had occurred.

**10. Insurance ☞819(1)—Undenied certificate, proof of death, and notice make out a prima facie case.**

There being no pleading denying execution of a life certificate sued on, plaintiff makes out a prima facie case on admission in evidence of the certificate and proof of death of assured and due notice thereof to assurer.

**11. Pleading ☞376—Plaintiff need not prove a thing admitted by a plea.**

Under a plea in action on a life certificate admitting the seasonable mailing of money for an assessment after suspension for nonpayment of it within the month, but denying that it was received, so as to constitute a payment and thus work a reinstatement, such mailing need not be proved.

**12. Insurance ☞825(2)—Whether assessment mailed in time for reinstatement was received so as to constitute payment held for jury.**

Whether assessment, which plaintiff testified and defendant admitted was seasonably mailed, was received so as to work a payment and reinstatement of assured, was a question for the jury; the clerk to whom it was addressed testifying it was not received.

**13. Insurance ☞760—Payment of arrearages within 10 days of suspension has prima facie effect of reinstatement.**

Under constitution of fraternal benefit insurance society providing that if a member suspended for nonpayment of assessment within the month pay all arrearages within 10 days of suspension, if in good health and not addicted to excessive use of intoxicants, he shall be restored to membership, and his benefit certificate shall become valid, it not being made a condition precedent to reinstatement within the 10 days that assured give evidence of his good health and freedom from excessive use of intoxicants, as it is where the payment is after the 10 days, payment within the 10 days has the prima facie effect of reinstatement, subject to be defeated by plea and proof that assured was not in good health, and was addicted to excessive use of intoxicants.

**14. Insurance ☞760—Question of payment of assessments being received so as to work reinstatement not one of "waiver."**

The question of whether money for an assessment was received so as to constitute a payment and reinstate a benefit certificate is not one of waiver within Acts 1911, p. 713, §

20, as to who can waive provisions of the laws or constitution of a fraternal benefit society.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

**15. Pleading ☞375—Unnecessary pleading of facts in replication held not to require proof thereof.**

That plaintiff, in an action on a benefit certificate, by the replication, pleads rules and regulations of the society and facts relative thereto, does not require proof thereof; it being unnecessary, in view of other evidence, to make out a case or meet the pleas.

**16. Evidence ☞155(8)—Plaintiff may introduce part of defendant's constitution.**

Plaintiff, in action on a benefit certificate, may introduce part of defendant's constitution, with right in defendant to introduce the rest.

**17. Insurance ☞818(1)—Letter of plaintiff's attorney tending to show notice to defendant of assured's death admissible.**

Letter of attorney of plaintiff in action on a benefit life certificate may be introduced, it tending to show notice to defendant of assured's death, and neither being a confidential communication nor containing anything else rendering it inadmissible.

**18. Evidence ☞314(3)—Statement of suicide not within witness' knowledge hearsay.**

Statement by witness of a fact not within his own knowledge, that another killed himself, is hearsay.

**19. Witnesses ☞281—Improper for question on cross-examination to assume a fact in controversy.**

It is improper for a question on cross-examination to assume a fact in controversy.

**20. Evidence ☞357—Letter held admissible as corroboration.**

As tending to corroborate testimony of assured's wife in an action on a benefit life certificate that she sent the money given her by her husband with a letter to the clerk of the local camp of defendant to pay an assessment, as to which he was in default, letter of the clerk, dated two days before, to assured, relative to the assessment, is admissible.

**21. Witnesses ☞268(2)—Cross-examination to test knowledge of witness held proper.**

To test the knowledge of defendant's witness in an action on a benefit certificate, as to the extent of the beneficiary membership in good standing and so subject to assessment, as affecting the amount due plaintiff on the certificate, a question on cross-examination seeking to elicit the fact of his attendance on a meeting of defendant's grand lodge the year in question, and the approximate number of delegates present, was proper.

**22. Witnesses ☞271(1)—Cross-examination to test efficiency of witness' bookkeeping proper.**

Question to the clerk of the local camp of defendant, who had on direct examination testified on the material inquiry, in an action on a benefit certificate, that a certain assessment

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had not been paid by assured, whether he had not at times found mistakes in his books, was proper cross-examination as to his method and the efficiency of his conduct of defendant's business.

Appeal from Circuit Court, Talladega County; A. B. Foster, Judge.

Action by Maude E. Adams against the Sovereign Camp, Woodmen of the World, on a beneficiary life certificate, issued upon the life of Robert Lee Adams. Judgment for plaintiff, and defendant appeals. Affirmed.

Amended counts A and B allege that the defendant executed a written policy of life insurance on the 20th day of July, 1909, on the life of Robert Lee Adams, payable to this plaintiff as provided by the said terms of said policy in the event of the death of said Robert Lee Adams in the sum of $2,000, a substantial copy of which said insurance policy with the indorsements thereon is hereto attached, marked "Exhibit A," and made a part hereof, as is written herein. Plaintiff avers that on or about the 12th day of February, 1916, the said Robert Lee Adams died; and plaintiff avers that said Robert Lee Adams was in good standing in said order at the time of his death, that said policy was in full force and effect, and plaintiff avers that the defendant had been given notice and proof of the death of said Robert Lee Adams, and has failed to pay said policy or any part of the same. Count B adds a claim for the additional sum of $100 for a monument under the terms of said policy. The certificate attached and marked "Exhibit A" was an exact copy of the policy. Plea C sets up the constitution and laws of the order, especially sections 109, 115, 119, and alleged a failure of Robert Lee Adams to pay his dues and assessments for the month of January, 1916.

"Section 109: 'Every member of this society shall pay to the clerk of his camp one annual assessment, or one monthly installment of such assessment, which shall be credited and known as the Sovereign Camp fund, and he shall also pay such camp dues as may be required by the by-laws of his camp. He shall pay an additional Sovereign Camp fund and camp dues, or either, which may be legally called. If he fails to make any such payments on or before the 1st day of month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void.'

"That section 119 of such constitution and laws is as follows: Section 119: 'A member suspended for nonpayment of assessments, or dues, is not entitled to any benefits of this society. He shall not be entitled to receive the passwords, nor to participate in any of the business or social proceedings of his camp. He may be admitted at a meeting only to pay his arrearages, and must retire if he fails to do so.'

"That section 115 of the constitution and laws of defendant order provides as follows: 'Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health, and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership, and his beneficiary certificate again become valid. After expiration of ten days, and within three months from the date of suspension of a suspended member to reinstate, he must pay to the clerk of his camp all arrearages and dues, and deliver to him a written statement and warranty, signed by himself and witnessed, that he is in good health, and not addicted to the excessive use of intoxicants or narcotics, as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue. Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and if any of the representations, or statements, made by said applicant be untrue, then said payments shall not cause his reinstatement, nor operate as a waiver of the above condition.'"

C. H. Roquemore, of Montgomery, for appellant.

Counsel discusses the assignments of error relative to the pleadings, but without citation of authority. He further insists that there is no payment, unless the money is received, and in support thereof cites the following cases: 160 Mass. 295, 35 N. E. 855, 39 Am. St. Rep. 475; 9 Gray (Mass.) 404, 69 Am. Dec. 299; 12 Gray (Mass.) 248, 71 Am. Dec. 753; 15 Mich. 273; 4 Ex. D. 216, 228; 5 C. P. D. 344; 5 Q. B. D. 344; 36 Ala. 9, 76 Am. Dec. 316; 6 Heisk. (Tenn.) 631; 31 Ga. 378; 79 Ill. 361; 108 S. W. 1042.

Riddle & Riddle, of Talladega, for appellee.

All policies of insurance are construed more strongly against the insurer. 7 May, 445. The presumption is that the clerk received the dues, and it was a jury question. 77 South. 692. The plaintiff made out a prima facie case. 166 Ala. 592, 52 South. 341.

This appeal was submitted under rule 46 (178 Ala. xix, 65 South. vii) Supreme Court Practice, and the opinion of the court delivered by Mr. Justice THOMAS:

The former appeal is reported in 201 Ala. 166, 77 South. 692. On the second trial the complaint was amended by the addition of counts A and B, to which demurrers were overruled.

[1] Appellee insists that the ruling on demurrer be not considered. The demurrer was to "counts A and B separately and severally as amended." The judgment entry recited that—

"By leave of court first had and obtained plaintiff amends her complaint by filing an amended complaint, consisting of counts A and B. * * * Thereupon the defendant files demurrers to said complaint as last amended,

\* \* \* and this cause being submitted to the court on demurrers to plaintiff's complaint as last amended, and said demurrers being heard, \* \* \* it is thereupon considered, ordered, and adjudged by the court that said demurrers be and the same are hereby overruled."

This ruling was not to the complaint as a whole, but was on the several demurrers directed "separately and severally" to the respective counts (A and B) added by way of amendment.

[2] In these counts the ownership of the policy sued on is sufficiently averred as "payable to this plaintiff as provided by the terms of said policy in the event of the death of the" assured. This was to aver the prima facie ownership in plaintiff when the instant suit was sought to be maintained. Code, § 5382, form 12. See analogous rulings in W. O. W. v. Ward, 196 Ala. 327, 330, 71 South. 404; Pacific Mut. L. I. Co. v. Hayes, 200 Ala. 246, 76 South. 12; Prudential Cas. Co. v. Kerr, 202 Ala. 259, 80 South. 97; Travelers' Ins. Co. v. Whitman, 202 Ala. 388, 80 South. 470. The case of Life Ins. Co. v. Bledsoe, 52 Ala. 538, was under the Revised Code of 1867, §§ 2629, 2630, where no specific form was provided for such action, yet the complaint, which was insufficient at common law, was sustained as a substantial conformity to the analogous forms prescribed by the Code. However, that decision has not the effect of relieving plaintiffs of the burden of averring and proving ownership in policies on which a suit is rested under the form now provided. Code, § 5382, form 12; Adler & Co. v. Pruitt, 169 Ala. 213, 53 South. 315, 32 L. R. A. (N. S.) 889. See, also, Norwich Union F. I. S. v. Prude, 145 Ala. 297, 40 South. 322, 8 Ann. Cas. 121; Prine v. Am. Cent. Ins. Co., 171 Ala. 343, 54 South. 547; Feibelman v. Manchester F. A. Co., 108 Ala. 180, 19 South. 540; 14 R. C. L. p. 1430, § 590.

[3] The ground of demurrer that plaintiff's several counts fail to aver that assured had complied with the conditions of the policy sued on is not well taken. The contract relation of the parties to the policy of insurance, and all of its material provisions, are averred in substance. In count A is the averment that said Robert Lee Adams was in good standing in said order at the time of his death, and said policy was in full force and effect at the time of his death. In count B it is further averred that defendant has failed to pay any part of said policy; and that plaintiff has complied with all the conditions of said policy developing on her as the beneficiary therein, and that the said Robert Lee Adams complied with all the conditions of said policy required of him as the assured, and that the defendant has wholly failed to comply with the terms and conditions of the policy as to payment of respective amounts due thereon.

[4] The objection to the counts that it is insufficiently averred that the policy made a part of the several counts was but a substantial copy thereof, and "fails to show that the copy [so exhibited] is a true and correct copy of the policy sued on." The several counts added by way of amendment only purported to exhibit as a basis of the suit a "substantial copy" of said insurance policy, with the indorsements thereon, and this may be done under the rule of pleading obtaining in this state. Pike County v. Hanchey, 119 Ala. 36, 39, 24 South. 751; B. R., L. & P. Co. v. Littleton, 201 Ala. 141, 145, 77 South. 565; Will's Gould, Pl. pp. 71 (A), 198, 360, 364. The substance of the policy and the several indorsements thereon are averred in the respective counts, by the substantial copy exhibited, and it will be held a sufficient averment of all its material and essential parts of the policy as affecting liability, and the extent thereof, without qualification in any respects material to the risk. Such has been the holding in other jurisdictions of the meaning of the phrases "substantial copy," and "substantially true," etc. Thomas v. State, 103 Ind. 419, 426, 2 N. E. 808; Jeffrey v. United Order Golden Cross, 97 Me. 176, 53 Atl. 1102; France v. Ætna L. I. Co., 9 Fed. Cas. 657; Adams v. Edwards, 1 Fed. Cas. 112, 114.

[5, 6] The judgment entry recites that plaintiff's demurrers to pleas 1, 2, 7, 9, A, B, and C were overruled, and demurrers to pleas 3, 4, 5, 6, 8, 10, 11, 12, and D were sustained. The assignment of error seeking to challenge the rulings sustaining demurrers to said several pleas was joint; therefore, to avail defendant, there must be an erroneous ruling in sustaining demurrers to each of said pleas; and if one of said pleas was subject to the demurrer interposed, the assignment of error will not avail. In several of the pleas there is not set out the condition and agreement of the policy to which plaintiff's intestate is averred to have failed of compliance and which rendered the policy null and void. The plea should not have drawn this conclusion from the appropriate conditions or agreements contained in the policy, but should have averred the condition or agreement from which the default followed and continued to the death of the assured. Dowling-Martin Gro. Co. v. Lysle Mfg. Co., 203 Ala. 491, 83 South. 486. This defect was sufficiently pointed out in several of the grounds of demurrer assigned.

An examination of the several pleas will show that the question at issue was whether or not the policy was in force at the time of the death of the assured, which fact was dependent upon certain of the provisions of the constitution and by-laws of the order, providing for assessments and dues to be paid at stated intervals as related to the instant contract and the installment of $2.60

for January, 1916, before the 10th day of February thereafter, and whether actual payment thereof was made. The rules and regulations of the order and section 68 thereof, providing that when a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing, of the member holding the same, payment thereof shall not be contested on any grounds other than that his death was caused (1) intentionally by the beneficiary; (2) or by the hands of justice; (3) or from the direct result of drinking intoxicating liquors; (4) or from the use of opiates, cocaine, chloral, or other narcotics or poison; (5) or while engaged in war, except in defense of the United States of America—are for construction. This section was set up by way of replication to certain of defendant's pleas; so, also, was section 115 of the constitution and by-laws of defendant order, providing that, should a suspended member pay all arrearages and dues to the clerk of his camp within 10 days of the date of his suspension, and if in good health and not addicted to the excessive use of narcotics or intoxicants, he shall be restored to membership and his beneficiary certificate again become valid.

The issues presented under the foregoing and other pertinent provisions of the constitution and by-laws of defendant order have been presented by the pleading, pleas and replications thereto. For example, one of defendant's pleas (C) averred that it was a fraternal benefit society, and the instrument sued on was issued in consideration of the agreement of the assured to pay all assessments and installments that might become due or levied during the time in which he remained a member thereof; that the policy contained a provision that if said assessments or installments were not paid to the clerk of the camp, as required by the constitution and laws of the defendant, said policy shall become null and void, and so continue "until payment is made in accordance therewith," and that said policy was accepted upon condition that the constitution and laws of defendant should bind the member and his beneficiary in all respects as if made a part of the policy. It is then averred that the constitution and laws of defendant order in force during January and February, 1916, provide that every member of the society shall pay to the clerk of his camp one annual assessment, or one monthly installment of such assessment, which shall be credited and known as the Sovereign Camp fund, and he shall also pay such camp dues as may be required by the by-laws of his camp; that he shall pay an additional Sovereign Camp fund and camp dues, or either, which may be legally called; that if he fails to make any such payments on or before the first day of the month following,

he shall stand suspended, and during such suspension his beneficiary certificate shall be void. It is further averred of the constitution and laws that there is contained a provision of suspension for nonpayment of assessments or dues; that a member so suspended shall not be entitled to any benefits of the society, and may be admitted to a meeting only to pay his arrearages; that by section 115 of the constitution it is provided that—

Should a suspended member pay all arrearages and dues to the "clerk of his camp within ten days from the date of his suspension, and if in good health, and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership, and his beneficiary certificate shall become valid. After the expiration of ten days, and within three months from the date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health, and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement and waiving all rights hereto if such written statement and warranty be untrue. Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and if any of the representations or statements, made by said applicant, be untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions."

The plea concludes with an averment that—

The assured failed to pay the assessment or installment for January, 1916, on or before the 1st of February, 1916, and became suspended for the failure to pay such assessment; that "at the time the clerk of the local camp, to which said payment should have been made, resided in the city of Tuscaloosa, Ala.; that on, to wit, the 7th day of February, 1916, the plaintiff, who was then the wife of said Adams, attempted to send $2.60 to the said local clerk in Tuscaloosa, by placing said money in an envelope and mailing said envelope in the post office in the city of Talladega, addressed to the said local camp clerk and properly stamped, thereby attempting to pay for her husband the said January assessment; but defendant alleges that said money nor said envelope never reached the said local clerk, and was never received by said local clerk, and the said Adams died, on, to wit, the 12th day of February, 1916. Wherefore the defendant is not indebted to the plaintiff."

[7-10] Several propositions of the law of insurance are well established: (1) That policies of insurance are prepared by companies with care and skill to limit liability as much as possible; (2) that all provisions of such policies are strictly construed against the assurer and favorable to the assured, especially so with reference to forfeiture provisions and clauses (Equitable L. A. Soc. v.

Golson, 159 Ala. 508, 48 South. 1034; Piedmont v. Young, 58 Ala. 476, 29 Am. Rep. 770; U. O. Golden Cross v. Hooser, 160 Ala. 334, 49 South. 354; 7 Mayf. Dig. 445); (3) that waiver of forfeiture for nonpayment of a premium on the date it accrued did not create a new contract of insurance dating from the waiver, but its legal effect was to treat the original contract of binding force as if no cause of forfeiture had occurred or existed (Mut. L. I. Co. v. Lovejoy, 201 Ala. 337, 78 South. 299, L. R. A. 1918D, 860; Ala. State Mut. Assur. Co. v. Long Clo. & Shoe Co., 123 Ala. 667, 26 South. 655; Pac. Mut. L. I. Co. v. Hayes, 202 Ala. 450, 80 South. 834); (4) that in case of reinstatement of fraternal benefit insurance (for example, by payment of monthly installments within the 10-day period provided by section 115 of defendant's constitution and laws), such as the certificate sued on, a new contract or certificate of insurance, dating from the reinstatement, was not created, but that the legal effect of such reinstatement was the continuing of the original contract or certificate of insurance as if no cause of forfeiture for nonpayment of said monthly assessments or dues had occurred or existed; (5) that, there being no pleading denying the execution of the policy sued on, the plaintiff makes out a prima facie case when a policy on which the suit is based is admitted in evidence, and there is proof of the death of assured and due notice of such death to the assurer. Manhattan Life Ins. Co. v. Verneuille, 156 Ala. 592, 597, 47 South. 72.

[11] By defendant's plea C the issue was narrowed, under the quoted provisions of the constitution and by-laws of the association and the status of the assured, Adams, in January, 1916, to the admitted fact that, on February 7, 1916, plaintiff (wife of Adams) attempted to send the amount stated to the said local clerk at Tuscaloosa, where the clerk of the local camp resided, by placing said money in an envelope and mailing it in the city of Talladega, addressed to said local camp clerk, and properly stamped (Holmes v. Bloch, 196 Ala. 322, 71 South. 670; N. L. Carpenter Co. v. Naftel, 203 Ala. 487, 83 South. 471; Corley v. Vizard, 203 Ala. 564, 84 South. 299; Farmers' Mut. Ins. Ass'n v. Stewart, 192 Ala. 23, 26, 68 South. 254; Pioneer S. & L. Co. v. Thompson, 115 Ala. 552, 556, 22 South. 211; Corry v. Sylvia y Cia, 192 Ala. 550, 68 South. 891, Ann. Cas. 1917E, 1052); thereby attempting to pay the January assessment for her husband, but that "said money nor said envelope never reached the said local clerk, and was never received by said local clerk, and the said Adams died on, to wit, the 12th day of February, 1916," without such payment being so received and made. Under such admission in defendant's pleading (Speakman v. Vest, 154 Ala. 412, 45 South. 667; Brown v. French, 159 Ala. 645,

648, 49 South. 255; Cowley v. Farrow, 193 Ala. 381, 385, 69 South. 114), it may not say that Mrs. Adams did not mail the installment as recounted in the plea; and it was not necessary for her (the beneficiary) to prove that she did so mail it, when that fact was admitted by the plea.

[12] As stated, confessed by its pleading (plea C) the mailing of the January dues on February 7, 1916, to the clerk of the camp at Tuscaloosa raised the presumption or was a fact from which the jury might infer that said clerk received the same, and this inference may be drawn notwithstanding the testimony of said clerk that it was not received. Under the testimony of Mrs. Adams that she did transmit the January dues by due course of mail, the conflict in evidence as to its receipt became one of fact for the jury, who had the opportunity of seeing and hearing the witnesses testify; that is, it was for the jury to say whether or not said clerk received the January installment sought to be so remitted by mail, and whether there was a payment of all arrearages accruing before the death of assured. Carpenter Co. v. Naftel, supra. Such was the observation of Mr. Chief Justice Anderson of this state of the testimony:

"It is true there was much evidence contradicting the plaintiff as to sending the dues by mail on February 7th as testified to by her, apart from the denial by the addressee of having received the same; but with her evidence in the question should have been submitted to the jury, and the trial court erred in giving the general charge for the defendant. If the January payment was made, the nonpayment of the February assessment could not preclude a recovery, as the insured died before he could have been suspended for the nonpayment of the February assessment." Adams v. W. O. W., 201 Ala. 166, 77 South. 692.

[13] The several provisions of the constitution and laws of defendant order, in force in January and February, 1916, exhibited as a part of plea C (sections 109, 115, 119) will be set out by the reporter of decisions. It is observed of section 115 of said constitution and laws that the conditions on which payment of arrearages may be made and as affecting reinstatement are different accordingly, as payment may be made within 10 days from the date of suspension, and if in good health and not addicted to excessive use of intoxicants or narcotics, which latter facts become matters of defense. If such payment is made after the expiration of 10 days, and within three months of the date of suspension, to effectuate a reinstatement payment to the clerk of his camp of all arrearages and dues must be made, and the assured must also deliver to said clerk "a written statement and warranty signed by himself and witnessed that he is in good health and not addicted to the excessive use of intoxi-

cants or narcotics." That is to say, the payment by assured of all arrearages to the clerk of his camp within 10 days of the date of his suspension has the prima facie effect of reinstatement, subject to be defeated by the plea and evidence on defendant's part that at the time of payment within 10 days of suspension the assured was not in good health, and was addicted to the excessive use of intoxicants or narcotics. It was not made a condition precedent to reinstatement within the 10-day period that such evidence of assured's good health and freedom from the excessive use of intoxicants or narcotics should be given by assured; that being defensive matter available to the insurer.

[14] The real defense of defendant was not that at the time of payment or attempted payment on February 7th of all arrearages and dues to the clerk of his camp within 10 days from the date of his suspension, to wit, February 1st, the assured was not in good health or was addicted to the excessive use of intoxicants or narcotics at the time of such attempted reinstatement, but that no such payment was received by the clerk of the local camp in the city of Tuscaloosa, the place of residence of such clerk; the issues of fact being thus simplified by the pleading, jury questions were presented and a proper submission of the same was made. Hardy v. W. O. W. (App.) 81 South. 690; W. O. W. v. Wallace, 16 Ala. App. 617, 80 South. 691. The question for decision was one of payment of premium within the time stipulated by the parties to the contract, and not one of waiver. Acts 1911, p. 713, § 20, recently discussed in Beiser v. W. O. W., 199 Ala. 41, 74 South. 235; K. of Mod. Maccabees v. Gillespie, 14 Ala. App. 493, 71 South. 67; Knights of the Golden Cross v. Hooser, 160 Ala. 334, 49 South. 354, 38 L. R. A. (N. S.) 572, note.

[15] Plaintiff's replications 2 and 3, held by the trial court not subject to the demurrer named therein, averred that according to the rules and regulations of the order, when a beneficiary certificate has been in force for five consecutive years immediately preceding the death of intestate (Pac. Mut. L. I. Co. v. Hayes, 202 Ala. 450, 80 South. 834, 838), payment thereof shall not be contested on any grounds other than we have indicated; and it is further averred that no such conditions obtained justifying the failure of payment; and (the other replication) that during the months of January and February, and at the time of assured's death, and on February 7, 1916, when payment was made of all arrearages, that the assured was in good health and not addicted to the excessive use of narcotics or intoxicants.

Under the motion for a new trial appellant insists that the same should have been granted for failure of plaintiff to show that Adams was in good standing at the time of his death, and that under replication 2 it was her duty to show that the assured had been in continuous good standing for the five years next preceding his death; that she practically admitted that Adams was suspended on January 1, and undertook to show that he had been reinstated by the attempted payment through the mails of date February 7th. Under her testimony it was a reasonable inference the jury might draw that such payment was received by the clerk of the camp, and that the assured was duly reinstated. If so, assured's right and his beneficiary come within the provisions of section 68 of defendant's rule exhibited in said replication.

[16] There was no error in permitting plaintiff to introduce in evidence a part of the constitution of defendant order; its authenticity being proven. By way of reply or counter defense defendant may have introduced other sections or applicable provisions of the constitution governing the order, or offered in evidence its by-laws, if such there were. The fact that the pamphlet attached to the deposition of John T. Yates was a true copy of the constitution, laws, and by-laws of the Sovereign Camp of the Woodmen of the World, did not prevent the same being detached and parts thereof offered in evidence. The fact remains that the testimony of Mr. Roquemore was sufficient to authenticate and identify the pamphlet as a true copy of the constitution, laws, and by-laws of the Sovereign Camp of said order.

[17] The letter of plaintiff's attorney (Mr. Garrett) to Mr. Yates tended to show notice to defendant of the death of assured, and was not subject to the objection urged against its admission in evidence. It was not a confidential communication between defendant's agent and attorney containing privileged matter, as was the case in W. O. W. v. Ward, 196 Ala. 327, 71 South. 404. It contained no offer or attempt of compromise that would render it inadmissible on defendant's objection.

[18] The statement of the wife as a witness that the husband killed himself on Saturday was a mere hearsay, and should not have been given the jury. The inference should have been drawn from the facts attending the death of assured as to its cause. The witness did not know of her own knowledge that assured committed suicide, and hence may not state that fact in reply to the questions, "What time of day Saturday was it that he killed himself?" and "You don't deny that he [Adams] killed himself?"

[19-21] The question by defendant, "How did he [Mr. Estes, a friend] know that the January assessment had not been paid?" assumed the controverted question of assured's default, which was improper cross-examination. The witness had stated the fact that

she had been requested by her husband, who was incarcerated in jail, to send to the clerk in question (Mr. Deacy) the amount of $2.60 in payment of premium on the policy, and she was discussing the same with Mr. Estes and wife. The letter of "D. J. Deacy, Clerk," dated February 5th, to assured, was competent as tending to corroborate Mrs. Adams as to the fact that on its receipt by her husband he showed the same to her, gave her the reply thereto, and necessary money to remit the dues by post office order, etc. The date of the wife's visit to the jail was controverted and important, and this letter somewhat elucidated that fact. Under the allegations of count B "of the entire beneficiary membership of said order in good standing" in February, 1916, and upon whom an assessment could be made, the question to Deacy seeking to elicit the fact of his attendance on the biennial meeting of the Grand Lodge of the order the year in question and the approximate number of delegates present, was but an effort by proper cross-examination on the part of plaintiff to test the knowledge of the witness as to the extent of such "entire beneficiary membership," in good standing at the time covered by the policy, as affecting the amount due thereon.

[22] The defendant had examined Mr. Deacy with a view to showing default, suspension of assured, and a failure to be reinstated under its constitution and by-laws. That witness had testified that he was defendant's clerk at Tuscaloosa, and that he kept the Woodmen's funds at such point; that he was connected with the post office; that witness' books "upon which the accounts of the members were kept were at the Broad street barber shop," and not at the post office where witness kept all the books and made all the charges in the books himself and "the receipts in the receipt book for each month" and "entered the payments on a small cashbook," and "[witness] made the entries on the member's account from this." Plaintiff asked the witness if during the time he was such clerk he did not find there were mistakes in the books, to which the witness answered, "Yes, sir." Witness was then asked, "You have found out sometimes where a man had paid, you would find mistakes?" and replied, "It has happened." This was merely a cross-examination of witness as to his method and efficiency of his conduct of the company's business at such point. The material inquiry for the jury was whether or not the payment of the premium in question, $2.60, alleged by plaintiff to have been remitted through due course of mails, was received by said clerk and entered upon defendant's books as payment of the January assessment before January 10th, and defendant's evidence on the part of

said clerk was that the payment of premiums had not been made by the assured after the January, 1916, installment.

There was no error in refusing the general affirmative charge requested by defendant. The testimony was in sharp conflict as to whether or not there was default and payment of the premium due on February 1st, and whether such payment was made by mail before February 10th. The motion for a new trial was properly overruled.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.