(94 South. 554)

**SOVEREIGN CAMP, W. O. W., v. BLANKS et al. (7 Div. 273.)**

(Supreme Court of Alabama. Nov. 16, 1922.)

1. **Insurance ☞750—Suspension for nonpayment of dues held under by-laws to defeat recovery on certificate.**

Where the constitution and by-laws of a fraternal insurance order provided that a member was suspended if the assessments were not paid by the first day of the month following that in which they became due, and that during such suspension his beneficiary certificate should be void, there can be no recovery on the certificate where it was undisputed that the assessments for the two months preceding that in which the member was killed had not been paid.

2. **Insurance ☞753(1) — Local clerk cannot accept payment of assessments by delivery of chattels.**

The clerk of the local camp of a fraternal insurance order has no authority to accept the payment of dues in merchandise, chattels, or choses in action, so that the delivery by insured to the clerk of a cow, in consideration of which the clerk agreed to assume the payment of the member's assessments, was merely a personal transaction between them, and not the payment of the assessments.

3. **Insurance ☞755(2)—Agreement of local clerk to pay assessments in payment for cow is not binding on order.**

The agreement of the local clerk of a fraternal insurance order to pay the assessments of a member as they fell due in return for the delivery of a cow by the member to the clerk is not binding upon the order, in the absence of any proof that it knew or acquiesced in the agreement, so there was nothing upon which to rest either the doctrine of estoppel or of ratification.

Miller, J., dissenting.

Appeal from Circuit Court, Clay County; W. L. Longshore, Judge.

Action by Sam Blanks and others against the Sovereign Camp of the Woodman of the World. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

C. H. Roquemore, of Montgomery, for appellant.

The contract calls for the payment of money, and does not confer on the local clerk authority to settle dues and assessments in any other mode than actual money. 27 Ala. 612; (Tex. Civ. App.) 164 S. W. 1082; 99 Mo. App. 349, 73 S. W. 300; 151 Mo. 522, 52 S. W. 388.

R. G. Rowland and Lackey, Pruet & Glass, all of Ashland, for appellees.

The secretary of a local branch of a fraternal society, charged with the duty of collecting the assessments on benefit certificates issued by the Grand Lodge, is the agent of such lodge with respect to the business of such collections. 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533; 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 904; 144 Ark. 345, 222 S. W. 740.

PER CURIAM. Suit by appellees against appellant upon a beneficiary certificate issued by the Sovereign Camp, Woodmen of the World, upon the life of one William E. Blanks, dated March 4, 1916. Blanks was accidentally killed on June 7, 1919. The cause was tried upon the plea of general issue and special pleas setting up default in the payment of dues by Blanks, and that he was thereby suspended, and that the certificate became null and void under the laws of the order. There was verdict and judgment for the plaintiff, from which the defendant has prosecuted this appeal.

[1] The evidence is without dispute that both the April and May assessments of the year 1919 had not been paid by Blanks. Under the laws of the order the dues were payable the 1st day of each month, and if not paid by the 1st day of the following month the member was held suspended—the constitution and by-laws thereof providing that "during such suspension his beneficiary certificate shall be void." There are other provisions in regard to reinstatement not necessary to mention, as there is no contention any effort was made for reinstatement. Many of the provisions of the constitution and by-laws of this organization are found set out in Sovereign Camp, W. O. W., v. Adams, 204 Ala. 667, 86 South. 737 and need no restatement here. Without more, therefore, under the undisputed proof above referred to, the plaintiffs could not recover. Sov. Camp v. Gay, 207 Ala. 610, 93 South. 559.

[2] To avoid this result, as is disclosed in the opinion of Justice MILLER, to whom the cause was originally assigned, the plaintiffs rely upon a private agreement claimed to have been entered into between Blanks, the insured, and one Garrison, the clerk of the local camp. There was evidence tending to show that insured sold to Garrison a cow at $75, and the evidence for the plaintiffs tends to show that Garrison agreed to meet the installments of assessments upon this certificate as they fell due; to use in substance, the language of one of the witnesses, he assumed the payment thereof. It was without dispute, however, that this was purely a personal matter and a personal debt, in which the defendant order was without interest, and of which it had no notice. The evidence in regard to this private transaction and agreement was strenuously objected to by the defendant, but the objection was overruled. In this the court erred. The clerk of the local camp had no authority to

accept the payment of dues in merchandise, chattels, or choses in action, but only in money. 31 Cyc. 1371. The constitution and by-laws contemplated the payment of these dues in money only. The local clerk had no authority to waive these provisions of the constitution and by-laws of the order. W. O. W. v. Maynor, 206 Ala. 176, 89 South. 751; Sov. Camp v. Gay, supra; Sov. Camp v. Tucker, 206 Ala. 562, 90 South. 801; Sov. Camp v. Allen, 206 Ala. 41, 89 South. 58.

[3] The agreement of the local clerk to pay these assessments as they fell due was not binding upon the order. There is no pretense that the defendant order, knew of or acquiesced in any such agreement, and nothing upon which could rest either the doctrine of estoppel or ratification. The Court of Civil Appeals of Texas in Sov. Camp v. Wagnon, 164 S. W. 1082, speaking to a question analogous to this phase of the case, said:

"It was no defense that the clerk of the local camp agreed to pay the assessments when due, or notify Mrs. Wagnon in case he should decide not to do so, because under the by-laws of said order he had no authority to do that. Besides this, it does not appear that the Sovereign Camp had any notice of any such agreement on his part. Such an agreement, if any, in the absence of such notice, was not binding upon the order."

The majority of the court therefore are of the opinion that the evidence in regard to this private agreement was subject to the objections interposed thereto, and that under the undisputed proof the defendant was entitled to the affirmative charge.

Let the judgment be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

MILLER J. (dissenting). This is a suit by Sam Blanks and others, minors, by their next friend, Mrs. Ida Blanks, against the Sovereign Camp, Woodmen of the World, upon a fraternal benefit certificate for $3,000 issued by the defendant on the life of W. E. Blanks. There was judgment, on verdict of the jury, for $3,550.66⅔ in favor of plaintiffs, and the defendant appeals.

The cause was tried on pleas of general issue, and that under certain parts of the constitution and by-laws of the defendant, which are set out in the plea, the certificate of insurance was null and void for nonpayment of the assessment by W. E. Blanks for the month of April, 1919, as the contract, constitution, and by-laws required, and that he was suspended on May 1, 1919, for nonpayment of the April, 1919, assessment, that he was never reinstated, and the certificate was void at the time of his death.

The court did not err in permitting the certificate of insurance to be introduced in evidence. There was no plea denying its execution. The complaint as amended was substantially in Code form. It sufficiently describes the certificate, and the certificate introduced corresponds with the description of it in the complaint. The complaint avers it was payable to Arrie M. Blanks; that she is dead, and plaintiffs are her and W. E. Blanks' minor children, and they are her only heirs at law; that there is no administrator of her estate, and there is no necessity for an administration of it, as she owed no debts and left no property at her death, except this certificate of insurance. Form 12, p. 1196, Code 1907; Norwich Union Fire Ins. Co. v. Prude, 145 Ala. 297, 40 South. 322, 8 Ann. Cas. 121; Sov. Camp. W.·O. W. v. Pritchett 203 Ala. 33, 81 South. 823.

William E. Blanks, the assured, was accidentally killed on June 7, 1919.

The court did not err in admitting in evidence the letter dated July 5, 1919, written by the Sovereign Commander of defendant to W. E. Blanks, the deceased (assured), stating he was suspended for nonpayment of installment No. 5 for May, 1919. It contradicted the testimony and report of John L. Garrison, the defendant's witness and clerk of the Lineville Camp, that Blanks was suspended for nonpayment of his April, 1919, assessment. The evidence without conflict shows that the assured had paid all of his dues and assessments promptly up to and including the month of March, 1919. His monthly dues under this certificate were $3 payable on the first of each month. Did he pay $3 for April before the 1st of May, and $3 for May before the 1st of June, 1919, or is the defendant prevented by its custom and conduct, through its authorized agent, acting in scope of his authority, in collecting the assessments of assured, under the circumstances as presented by evidence of plaintiffs to claim that Blanks' assessments for those two months were not paid to its agent by the assured within the time required? These are the questions presented by this record.

Section 109 of the constitution and by-laws of the defendant reads in the part applicable as follows:

"If he [the assured] fails to make any such payment on or before the first day of the month following, he shall stand suspended and during such suspension, his beneficiary certificate shall be void."

Section 69 of the constitution and by-laws provides that its by-laws and constitution "shall constitute a part of the beneficiary contract between this society and the member." If Blanks failed to pay his dues, $3 per month, for April or May, or both, before his death as the constitution and by-laws provided, he became thereby suspended, and

his certificate of insurance was rendered null and void.

The defendant contends that the assured did not pay his $3 dues for April before the 1st of May, and did not pay his $3 dues for May before the 1st of June, 1919; that when he died on June 7, 1919, he owed $6; that he was suspended for nonpayment of the $3 for April, 1919, and his certificate of insurance was therefore null and void; and the evidence of the defendant tended to establish these contentions.

There was evidence for plaintiff that John L. Garrison was clerk of defendant's camp at Lineville, of which Blanks was a member, for several months prior to the death of the assured. It is indefinite as to how long he was the clerk. During the time he was clerk there was evidence that Blanks sold him individually a cow for $75; that the $75 was not paid to the assured, but it was kept by Garrison for the purpose and under agreement with him to pay his assessments or premiums monthly out of it to the defendant as long as it would last. Four installments were paid out of it by Garrison to the defendant. These four installments for four months were the four months just prior to April, 1919. In March, April, May, and June there was still much more than enough money in the hands of Garrison to pay the assessment for April, May, and June, 1919. There was evidence by John L. Garrison, the clerk, witness of defendant on cross-examination by plaintiff, as follows:

"I did not agree to pay the installments for him out of the $75. * * * I did not pay any installments for him out of money I had of his in my hands. I paid four installments for him out of money I was owing him. I had no agreement with Blanks that the money I had in my hands would continue to pay these dues. No such agreement was ever entered into, and never existed. * * * I had no conversation in there in substance as you have inquired about if you hold me to a strict construction. I did agree for a stipulated time, but not to keep it up. I did agree for a stipulated time, until Blanks notified me not to pay any more."

There was evidence by Garrison also that prior to April, 1919, Blanks notified him (the clerk) to pay no more assessments out of these funds in his hands, and that he needed and wished the money paid to him or note given for it; and there was other evidence, not necessary for us to set out in this opinion, from which the jury could reasonably infer that no such notice was given Garrison by Blanks. The evidence is without conflict that no demand was made for it. Garrison never paid any of the money to Blanks, never gave him any note for it, and still owes all of it, except the four installments paid by him for Blanks to the defendant. The plaintiff insists that the report of the suspension of Blanks for nonpayment of his April assessment by the clerk of the camp, Garrison, was false; that it was made by him after he heard of the death of Blanks, and was designedly made to aid defendant in defeating recovery on the policy, and to shield himself in his negligent failure to perform his duty in sending in the April and May assessments as per his agreement with Blanks, and as the constitution required. This was for the consideration of the jury under the entire evidence in the case.

Under section 112 of the constitution and by-laws of the defendant, the camp clerk must make monthly reports and remittances to the Sovereign Camp on or before the 5th of each month for the previous month. The report for April should have been made on or before the 5th of May. None was made by Clerk Garrison. The report for May should have been made on or before the 5th of June. None was made. Blanks died on June 7, 1919. Camp Clerk Garrison knew of it. This clerk of the camp makes report dated June 4, 1919, to the Sovereign Camp; it reaches Omaha, Neb., the home office of defendant on June 11, 1919. It was a report for April. It shows 72 members of that local camp, $89.89 due Sovereign Camp, W. E. Blanks suspended for nonpayment of $3, April assessment. No funds were remitted with it. It appears the entire camp was suspended by the defendant on the report; but the funds due the Sovereign Camp were by this clerk afterwards remitted, and the camp was reinstated. It has indorsed on it "Camp Reinstated." We find no evidence showing how long it would take this report to go by mail from Lineville to Omaha, Neb. This was material; it bears on the intent and purpose of the clerk, Garrison, in making the report, tending to show when it was made, before or after death of assured. This section (112) of the by-laws and constitution of the defendant also stated:

"If any camp through its proper officers fails to remit the Sovereign Clerk as required to be done above, on or before the last day of that month, the camp and all its members shall stand suspended and shall not be reinstated until payment of all money due from said camp to the Sovereign Camp shall have been received and accepted by the Sovereign Clerk. Provided that such suspension shall not render void the certificate of membership held by any member until the expiration of the full time for which he has paid assessment and dues."

This court in Sovereign Camp, W. O. W., v. Adams, 204 Ala. 667, 86 South. 737, declared:

"That policies of insurance are prepared by companies with care and skill to limit liability as much as possible; * * * all provisions of such policies are strictly construed against the assurer and favorable to the assured, especially so with reference to forfeiture provisions and clauses."

See 7 Mayfield Dig. p. 445.

Sec. Life Ins. Co. v. Bates, 144 Ark. 345, 222 S. W. 740, is a case similar in many respects to this one. Wirt was the agent of the insurance company with authority to collect the premiums on the policy; and he was also the credit man of the firm that had agreed to furnish the money to pay the premiums on the policy. The assured was killed in battle in France, and the additional premium under the War Risk clause of the policy was not collected by Wirt and paid to the Insurance Company before his death, and the company was defending on that ground. The court said:

"Wirt was the credit man for a mercantile firm in Dardanelle and had authority to say when and how much money would be paid by the firm for each customer. He agreed with the insured and his brothers to take care of the premiums on his policy and to pay them to the company and charge the Bates brothers with them on the books of the mercantile company. Of course, in making the payment to the insurance company he was acting as agent of the Bates brothers, but in receiving the money he was acting as agent of the insurance company. The Bates brothers made an arrangement in advance with the mercantile company to secure the money and Wirt promised to apply it to the payment of the premiums as they fell due. But the insured and his brothers were justified in believing that Wirt would pay the second premium when it fell due, and that he would pay the * * * additional premiums under the war risk clause. They had made arrangements for the money with the mercantile firm of which Wirt was the credit man and he agreed to send the money in to the insurance company. As general agent of the company, he had the authority to receive the money and send it in. The money was there under his control all the time, and he had nothing to do but send it in to the company. Therefore the court was justified in finding that the insured had done all that was necessary for him to do with regard to paying his premium. New York Life Ins. Co. v. Allen, 143 Ark. 143, and Sovereign Camp, Woodmen of the World, v. Newsom, 142 Ark. 132."

In Sov. Camp, W. O. W., v. Newsom, 142 Ark. 145, 219 S. W. 763, 14 A. L. R. 914, the Supreme Court of Arkansas wrote this, which we approve, and which is applicable to the evidence or some of its tendencies in this case:

"Since the clerk of the local camp must be regarded as the agent of the Sovereign Camp in the matter of collecting assessments and reporting the standing of members to the Sovereign Clerk, the knowledge of the agent, acquired in the discharge of his duties, was the knowledge of appellant. Appellant, therefore, must be held to have known that when the time came for the payment of Newsom's dues for the month of March he had on deposit in the Bank of Portland funds with which to pay such dues, and that such assessment would have been promptly paid at the time same was due but for the neglect and fault of appellant's own clerk and agent in collecting the same according to the method and custom which the agent had adopted in collecting or receiving the payment of dues and making his reports."

"It appears from the undisputed facts of this record that money was, on deposit in the Bank of Portland for the purpose of paying the assessments of Newsom at the time when they became due under the laws of appellant. The laws of the order nowhere prescribe the method which the clerk should pursue in collecting the assessments. That was left entirely with him, and he adopted the method of collecting same, as we have shown, by draft, with his receipt attached, on the bank where the money was deposited to pay the same. He also adopted (for his own convenience, not Newsom's), the custom of making his remittances and report after the 5th of each month. It occurs to us that the case is precisely the same in legal effect as if Newsom had tendered to the agent of the appellant, duly authorized to collect monthly assessments, the amount of such assessment at the time the same was due, and that the agent failed or refused, for some reason, no matter what, to receive the same and report to his principal, as was his duty to do on the 5th of each month.

"In Royal Circle of Friends v. Paine, 103 Ark. 171, 146 S. W. 142, we held that 'where a member of a mutual benefit association tenders his dues or assessments to the proper officers of the association, and the tender is refused, there can be no forfeiture of his rights for nonpayment of dues and assessments.'

"As we view the facts, it must be held as a matter of law that, so far as Newsom was concerned, he had paid his March dues; which is but another way of saying that the appellant is estopped, by the conduct of its duly authorized agent, acting within the scope of his authority, from asserting that such assessment was not paid."

John L. Garrison was the clerk of the local camp of which Blanks was a member. He, in collecting the assessments from the members, and in reporting the standing of the members to the Sovereign Camp, was the agent of the defendant.

It was competent for plaintiff to show that Garrison had in his hands funds or money of the assured, which he was ready to settle, an amount more than sufficient to pay all dues to the company at the time of his death, and out of these funds he had paid four months' installments of dues to the defendant for the assured. There was evidence that Garrison had agreed with Blanks to pay from the $75 fund in his hand belonging to Blanks the monthly assessments as long as it lasted, and that he was ready to pay it; and there was evidence to the contrary. This was relevant and competent evidence. The evidence of the plaintiff tended to show there was in the hands of the clerk, Garrison, personally, sufficient money to pay all of his dues and assessments to the company for April, May, and June, 1919; that Garrison had agreed with him to pay these dues and assessments to the company out of this money; and that Garrison was ready, willing, and

able to pay them as and when they matured; and that Blanks relied and depended on his paying them, but he failed to do so. For four consecutive months Garrison had previously paid them under this arrangement and agreement with assured. This evidence, if believed by the jury, was in the nature of a tender and delivery of the assessments by the assured to the agent of the defendant, who was authorized to collect the assessments, which the agent failed to remit to the defendant. The defendant's agent, Garrison, the clerk of the local camp, was authorized to collect and remit to the company these assessments against Blanks for April, May, and June, 1919; if Garrison during that time had in his possession or control sufficient money of Blanks to pay all of the three assessments to the company, and if Garrison was ready, willing, and able to pay the assessments as they matured; and if he and assured had agreed for the money to be applied to the payment of the assessments, and the assured relied and depended on Garrison in that way paying them, and Garrison, the collecting agent, had under this arrangement paid defendant four assessments and failed to remit the assessments of assured to the company for April, May, and June, 1919, then, under such circumstances, the defendant could not claim the assessments were not paid to its agent Garrison, and the certificate or contract of insurance would not be forfeited for nonpayment of the assessments. If, however, the assured, after the four payments were made to defendant from this fund by Garrison, directed Garrison, as defendant's evidence tended to show, to pay no more assessments from this fund, that it must be paid to him, and not to the company, then the certificate of insurance would be forfeited for the nonpayment of the assessments, unless they were paid in some other way, as and when the constitution and by-laws of the company require. Sov. Camp, W. O. W., v. Newsom, 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903.

The trial court under the evidence did not err in refusing to give the general affirmative charge with hypothesis for the defendant.

The trial court erred when it permitted the plaintiffs to ask the witness J. C. Blanks this question over objection of defendant:

"Now on the day prior to his death I will ask if you had a conversation with him (the assured) in reference to his Woodmen policy, while you were unloading coal at Lineville?"

There was no evidence that Garrison, the agent of defendant, was present during the conversation called for, and this evidence, without the presence of defendant or its agent Garrison, would be clearly hearsay and inadmissible (Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538); but this error was without injury as the conversation with the deceased does not appear in the record. That question was answered by the witness as follows:

"Yes, sir; on the day before his death brother and I unloaded a car of coal and there had been an insurance man asking me to take some insurance."

Section 3C of the constitution or by-laws of the defendant reads as follows:

"In the event of the death of all the beneficiaries designated before the death of the member, if no new designation had been made, the benefit shall be paid to the surviving widow and surviving children of the member, share and share alike, provided such widow shall not be entitled to any benefit if she shall have been divorced."

This certificate of insurance named Arrie M. Blanks, wife of William E. Blanks, as the beneficiary. She was the sole beneficiary. She died on October 18, 1917. William E. Blanks, the assured, died June 7, 1919. After the death of his wife, Arrie, W. E. Blanks married again, and at his death left a widow named Ida Blanks, and the six minor children. The six minor children are parties plaintiff by said Ida Blanks, as next friend; but Ida Blanks, the widow, is not personally a party plaintiff. She should be. Under section 3C of the constitution and by-laws, which are made a part of the contract or certificate of insurance, she and the six minor children are the beneficiaries, as there is no evidence that the assured after the death of Arrie Blanks designated any other beneficiary.

Section 2489, Code 1907 provides:

"Actions on promissory notes, bonds, or other contracts, express or implied, for the payment of money, must be prosecuted in the name of the party really interested," etc.

This applies to certificates of insurance like the one described and sued on in this case. The widow of W. E. Blanks is one of the beneficiaries in the certificate of insurance sued on, and she is one of the parties really interested and is not a party plaintiff in the case. There was a verdict and judgment for the entire amount, including interest due under the certificate, $3,550.66⅔, in favor of the plaintiffs. They are not entitled to all of it; but this question is not presented in any way that will require us to pass on it.

I cannot agree that under the evidence in this case the defendant was entitled to the affirmative charge. In my opinion it was a question for the jury to decide under the conflicting testimony and its tendencies, on the material issue, and I therefore respectfully dissent from the conclusion reached by the other justices of this court.